Frank Bredimus
*Counsel for the Debtor*
The Law Office of Frank Bredimus
P.O. Box 535
Hamilton, VA 20159
VSB # 28793
Tel:  (571) 344-2278
Fax:  (540) 751-1008
Email:  fbredimus@aol.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| In re: | ) |
| **THOMAS GIBSON JEWELL** | ) |
|  | ) |
| Debtor | ) |
|  | ) |

Case No.:  **17-11625-KHK**

Chapter 11

# <u>PLAN OF REORGANIZATION</u>

### May 26, 2017

Thomas Gibson Jewell, the Debtor and Debtor-in-Possession in this Chapter 11 case (hereinafter the "Debtor"), pursuant to 11 U.S.C. § 1123, by counsel, respectfully submits the following Plan of Reorganization (hereinafter the "Plan"):

## I.    SUMMARY OF THE PLAN

The Plan provides for full payments for all claims held against the Debtor. Class 1, Administrative/Professional fees, will be paid upon review and approval from the Court, and when funds are available from the Debtor.

Class 4, Carrington Mortgage Services, LLC, is secured creditor which will be treated as impaired by the Debtor. In order to save more funds for reimbursement of the Debtor's creditors, the Debtor, being a licensed real estate broker, will list the Leesburg Property for sale himself for two (2) years, and the Debtor shall pay the Class 4 creditor in full upon the sale of the Leesburg

Property. During the time the Leesburg Property is listed for sale, the Debtor will make adequate protection payments to the Class 4 creditor in the amount of $860.82 per month, and he will make the Loudoun County tax payment in the amount of $352.39 per month, and the Town of Leesburg tax payment in the amount of $58.26 per month. The Debtor is expecting a gross commission in the amount of $180,000.00 upon the successful closing of one of his real property listings within 100 days. If the Debtor receives said commission, he shall pay this creditor the total monthly payment in the amount of $2,638.54 and he shall pay any post-petition arrearages incurred. If there remains a deficiency after the sale of the Leesburg Property, the Debtor proposes to sign promissory note payable to the Class 4 creditor in the amount of the deficiency, and he will pay the deficiency amount over a five (5) year period at the interest rate called for in the promissory note.

Class 5, the Clarence G. Jewell Credit Shelter Trust, is an unsecured creditor which will be treated as unimpaired by the Debtor. The Debtor proposes to pay this creditor in full within thirty (30) days upon the receipt of the $180,000 commission.

Class 6, Capital One, is an unsecured creditor which will be treated as unimpaired. The Debtor proposes making the minimum monthly payment due to this creditor pursuant to the Debtor's contract with this creditor. The Debtor proposes to pay this creditor in full within thirty (30) days upon the receipt of the $180,000 commission.

Class 7, Credit One Bank, is an unsecured creditor which will be treated as unimpaired. The Debtor proposes making the minimum monthly payment due to this creditor pursuant to the Debtor's contract with this creditor. The Debtor proposes to pay this creditor in full within thirty (30) days upon the receipt of the $180,000 commission.

**Background and History.**

The Debtor commenced this case on May 12, 2017 by filing a Voluntary Petition under Chapter 11 of the U.S. Bankruptcy Code (the "Petition"). Debtor is a Virginia resident residing in Loudoun County, Virginia. The Debtor is self-employed as a real estate broker, and he has performed real estate services for clients for over thirty (30) years.

**Debtor and Its Property.**

The Debtor owns the following properties:

A residential property located at 114 Chesterfield Place SW, Leesburg, Virginia 20175 (the "Leesburg Property"), which is valued at approximately $450,000, and encumbered by a Deed of Trust held by Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust A in the amount of $435,696.55

## II.   DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in this Plan of Reorganization, which meanings shall be equally applicable to both the singular and plural forms of such terms. Any term not defined in this Plan of Reorganization shall have the meaning ascribed to it in the Bankruptcy Code or, if not defined therein, in the United States Code, or in the Code of Virginia (1950), as amended.

"ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under 11 U.S.C. § 507(a)(1).

"ALLOWED" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other

similar pleading has been filed within the applicable period, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

"BANKRUPTCY CODE" or "CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended.  References to "§ _____" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

"BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

"BAR DATE" means June 24, 2015, the final date for filing Proofs of Claim herein that was set by Order of the Court pursuant to the provisions of Bankruptcy Rule 3003(c)(3), or, in the case of a governmental entity, September 22, 2015.

"CASE" means this Chapter 11 Bankruptcy Case.

"CHAPTER 7" means Chapter 7 of the Bankruptcy Code.

"CHAPTER 11" means Chapter 11 of the Bankruptcy Code.

"CLAIM" means any right to payment, or right to an equitable remedy for breach of duty or performance if such breach gives rise to a right to payment from or against the Debtor, or property of the Debtor, in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"CLAIMANT" means a person holding a Claim against the Debtor.

"CLASS" means any class into which Allowed Claims are designated for treatment in Article III of this Plan of Reorganization.

"CLASS 1, CLASS 2, CLASS 3 ..." et al. means the Claims so classified in Section III of this Plan.

"CONFIRMATION" or "CONFIRMATION OF THE PLAN" means the entry by the Bankruptcy Court of an Order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

"CONFIRMATION DATE" shall mean the date of entry by the Court of an Order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

"CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1129.

"CONFIRMATION ORDER" shall mean the Order of the Court confirming the Plan.

"COURT" shall mean (a) the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor, or (b) the United States District Court for the Eastern District of Virginia (the "District Court"), to the extent that the District Court may lawfully exercise subject matter jurisdiction over the reorganization case.

"CREDITOR" shall mean any person having a Claim against the Debtor or property of the Debtor, as "creditor" is defined in and by 11 U.S.C. § 101(10)(A) or (B).

"DEBTOR" shall mean the Debtor, FBJ Real Estate, LLC, identified on the first page of this Plan.

"DISCLOSURE STATEMENT" means that certain Disclosure Statement dated March 23, 2015, filed by the Debtor in this bankruptcy case.

"DISBURSING AGENT" shall mean Frank Bredimus, or that person selected by the Court who shall perform the duties of Disbursing Agent and have the rights and obligations described herein.

"DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

"DISTRIBUTION DATE" shall mean the date on which distributions are to be made under this Plan.

"EFFECTIVE DATE" shall be the later of (a) the eleventh (11th) business day following the date of entry of the Order of Confirmation, or (b) if an appeal is filed, the fifth (5th) day after such appeal is finally resolved and no further appeal or certiorari proceeding is pending; provided, however, notwithstanding anything in this Section to the contrary, the Debtor may choose an earlier date to be the Effective Date.  If the Effective Date falls on a Saturday, Sunday, or legal holiday, the Effective Date shall mean the first business day thereafter.

"ESTATE" means the estate created in this bankruptcy reorganization case pursuant to 11 U.S.C. § 541.

"EXECUTORY CONTRACTS" means all contracts to which the Debtor is a party and which are executory within the meaning of 11 U.S.C. § 365, including unexpired leases.

"FILED" means filed with the Court or, in the case of a Proof of Claim or Proof of Interest, deemed filed pursuant to 11 U.S.C. § 1111(a).

"FILING DATE" OR "PETITION DATE" means February 16, 2015, the date on which the voluntary Chapter 11 petition of Debtor was filed with the Court.

"FINAL DECREE" shall mean the Order of this Court closing this case, pursuant to Bankruptcy Rule 3022.

"FINAL ORDER" shall mean an Order of the Court that has been entered and either (a) the time for appeal from such entered Order has expired, or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

"GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than an Administrative Claim, Priority Claim, or Secured Claim.

"IMPAIRED" classes of creditors are those whose Claims or interests are altered by this Plan, or who will not receive under this Plan the allowed amount of their Claims in cash as of the Effective Date.

"INSIDER" is defined in 11 U.S.C. § 101(31).

"ORDER OF CONFIRMATION" means the Order entered by the Court confirming this Plan in accordance with the provisions of Chapter 11.

"PERSON" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

"PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

"PRIORITY CLAIM" shall mean any claim to the extent it is entitled to priority in payment under 11 U.S.C. § 507.

"PROFESSIONAL(S)" means all attorneys, accountants, appraisers, consultants, and other professionals retained under an Order of the Court on behalf of the Debtor.

"PROPERTY" means all of the tangible and intangible personal property owned by the Debtor.

"PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a Claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated Class to the aggregate dollar amount of Claims in the indicated Class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

"RULE(S)" means the Federal Rules of Bankruptcy Procedure, as amended and supplemented by the Local Bankruptcy Rules adopted by the Court.

"SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

"SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtor has commenced the distribution of initial Plan payments to all Creditor classes.

"TAX CLAIM" shall mean any claim entitled to priority treatment pursuant to 11 U.S.C. § 507(a)(8).

"UNSECURED CLAIM" means any Claim, including unliquidated and contingent Claims, other than Claims arising under 11 U.S.C. § 507.

## III. CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS; COMPLIANCE WITH 11 U.S.C. § 1129

Section III of the Plan describes the classification of Claims and interests and the treatment of the various Classes of Claims and interests, including a description of whether each Class is Impaired or Unimpaired.

---

**THE PLAN CONTEMPLATES THE PARTIAL LIQUIDATION OF SOME OF THE DEBTOR'S REAL PROPERTY. IN ACCORDANCE WITH THE PLAN, THE DEBTOR INTENDS TO USE THE PROCEEDS FROM THE SALE OF STONE, FARM PRODUCTS, AND RENT TO MAKE ADEQUATE PROTECTION PAYMENTS TO ITS SECURED CREDITORS, AND TO USE THE SALE PROCEEDS FROM THE REAL PROPERTY TO PAY ALL ALLOWED CLAIMS OF SECURED AND UNSECURED CREDITORS IN FULL.**

---

In order to be confirmed (*i.e.*, approved) by the Court, the Plan must comply with 11 U.S.C. § 1129. The Debtor believes that the Plan complies with 11 U.S.C. § 1129 in all material and necessary ways.

In accordance with 11 U.S.C. § 1123(a), the Debtor's Plan classifies the following Claims, indicating whether each Class is Impaired or Unimpaired, and proposes the following treatment of such Claims:

## Class 1 – ADMINISTRATIVE COSTS

<u>Description of Claims</u>.  Class 1 consists of claims for any cost or expense of administration pursuant to 11 U.S.C. §§ 503, 506 and 507.  The following claims of Professionals will be paid subject to Court approval:

Frank Bredimus, Counsel for the Debtor

<u>Impairment</u>.    This Class will be Impaired.

<u>Treatment</u>.      No fees payable under Section 1930 of Title 28 have been paid through the date of Filing of the Plan. All Administrative Claims shall be paid in cash and in full (including accruals to date of payment) after review and approval by the Court, and when funds are available

from the Debtor. Payments to Professionals for reasonable compensation and reimbursement of expenses will be made in accordance with detailed procedures established by the Bankruptcy Code and Rules relating to such payments.   In the event that funds are not available to pay Class 1 Claims, then each holder of a Class 1 Claim, including the Debtor's Professionals, will receive partial payments from the Debtor until paid in full. The Debtor's Professionals agree to partial or deferred payments under this Plan if they cannot be paid in full.

## Class 2 –TAXES, UNSECURED PRIORITY CLAIMS

Description of Claims.  Class 2 consists of claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtor based upon the value of the property assessed. The Debtor is not aware of any claim(s) in this Class.

Treatment.      There are no claims in this Class.

## Class 3 – TAX CLAIMS

Description of Claims.  Class 3 consists of Tax Claims against the Debtor for income taxes, withholding taxes, unemployment taxes, and/or any and all other taxes levied or entitled to be levied against the Debtor by the United States Department of the Treasury, Internal Revenue Service, and/or the Virginia Department of Taxation, plus interest as allowed by law. The Debtor is not aware of any claim(s) in this Class.

Treatment.      There are no claims in this Class.

## Class 4 – CARRINGTON MORTGAGE SERVICES, INC., SECURED CLAIM

Impairment.  This Class will be Impaired.

Claim – $435,696.55

_Description of Debt_.  Carrington Mortgage Services, Inc. is owed $435,696.55 for a Deed of Trust secured by the Debtor's property located at 114 Chesterfield Place SW, Leesburg, Virginia 20175.

_Treatment_.     If the Leesburg Property were sold at auction, the funds received from the sale would not be sufficient to pay this creditor in full. Accordingly, because the Debtor is a Virginia licensed real estate broker with over thirty (30) years of experience, in an effort to save on fees and more effectively pay this creditor in full, the Debtor will list the Leesburg Property for sale himself. The Debtor intends to sell the Leesburg Property within two (2) years, upon which this creditor will be paid in full. In order to ensure that this creditor receives adequate protection, the Debtor will make monthly adequate protection payments in the amount of $860.82 per month until the Leesburg Property is sold. Moreover, the Debtor will pay $352.39 per month for the Loudoun County tax payment, and $58.26 for the Town of Leesburg tax payment.

The Debtor currently has three (3) real estate listings, which listings are attached hereto as **_Exhibit A_**. One of the Debtor's real estate listings is expected to go to closing within 100 days, and the Debtor's gross commission from the sale of this real property is expected to be $180,000.00. Accordingly, the Debtor proposes that, upon receiving his commission from the sale of this listing, he begin making the full monthly payment to this creditor in the amount of $2,638.54 per month. Any post-petition arrearages incurred between the time the Debtor's petition was filed and the time the Debtor receives said commission will also be paid within thirty (30) days of the Debtor's receipt of his $180,000.00 commission.

After the Debtor's receipt of said commission, he proposes to continue the monthly payment in the amount of $2,638.54 until the Property sells, at which point, the remaining balance owed to this creditor will be paid in full. If there remains a deficiency after the sale of the Property, the Debtor

proposed to execute a promissory note payable to this creditor in the amount of the remaining deficiency. The Debtor will pay on this promissory note over a five (5) year period at the interest rate called for in the promissory note.

## Class 5 – CLARENCE G. JEWELL CREDIT SHELTER TRUST, UNSECURED

Impairment.   This Class will not be Impaired.

Claim – $10,000.00

Description of Debt.   The Clarence G. Jewell Credit Shelter Trust is the trust which was established for the Debtor's father, Clarence G. Jewell. The Debtor is the Trustee of this Trust for the benefit of the Debtor's mother, Dorothy M. Jewell. The Debtor has borrowed funds from the Trust totaling $10,000.00.

Treatment.   As discussed above, the Debtor is expecting to receive a commission in the gross amount of $180,000.00 in approximately 100 days upon the successful settlement of one of his listed properties. The Debtor proposes to pay this creditor in full within thirty (30) days upon the receipt of said commission

## Class 6 – CAPITAL ONE, UNSECURED CLAIM

Impairment.   This Class will not be Impaired.

Claim – $3,312.00

Description of Debt.   Capital One is owed $3,312.00 for credit card purchases made by the Debtor. This creditor is listed as a separate class, because the repayment terms for this creditor differ from any other like creditors.

Treatment.   The Debtor proposes that he make the minimum monthly payments to this creditor required by the terms of the Debtor's contract with this creditor to this creditor. As discussed above, the Debtor is expecting to receive a commission in the gross amount of $180,000.00 in approximately

100 days upon the successful settlement of one of his listed properties. The Debtor proposes to pay this creditor in full within thirty (30) days upon the receipt of said commission.

## Class 7 – CREDIT ONE BANK, UNSECURED CLAIM

<u>Impairment</u>.    This Class will not be Impaired.

<u>Claim</u> – $973.00

<u>Description of Debt</u>.   Credit One Bank is owed $973.00 for credit card purchases made by the Debtor. This creditor is listed as a separate class, because the repayment terms for this creditor differ from any other like creditors.

<u>Treatment</u>.    The Debtor proposes that he make the minimum monthly payments to this creditor required by the terms of the Debtor's contract with this creditor to this creditor. As discussed above, the Debtor is expecting to receive a commission in the gross amount of $180,000.00 in approximately 100 days upon the successful settlement of one of his listed properties. The Debtor proposes to pay this creditor in full within thirty (30) days upon the receipt of said commission.

**The Debtor intends to commit all disposable income to payment of General Unsecured Claims.**

## IV.    THE PLAN IS FAIR AND EQUITABLE

A.    With respect to each Class of Secured Claims (Class 4 above):

(1)    The holders of such Secured Claims retain the liens securing such Claims, to the extent of the Secured Amount of such Claims; and

(2)    Each holder of a Secured Claim will receive on account of such Claim deferred cash payments totaling at least the Secured Amount of such Claim, of a value, as of the Effective date of the Plan, of at least the value of such holder's interest in the Estate's interest in such property; and

(3)    Any sale, subject to Section 363(k) of the Code, of any property that is subject to the liens securing such Secured Claims, shall be free and clear of such liens, with such liens to attach to the proceeds of such sale up to the Secured Amount of such Claims.

B.    With respect to all General Unsecured Claims, the holder of any claim or interest shall be paid in full provided they are listed on the Schedules, or have filed a Proof of Claim, and have had no Objections filed against their Claim.

## V.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as stated and specified above in this paragraph or in the Plan, all other contracts that exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which has not heretofore been rejected or heretofore been approved by Orders of the Court, will be specifically rejected;  provided, however, that this provision of the Plan is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any Secured Creditor.  Any person with a Claim arising from such rejection will be deemed to hold a General Unsecured Claim and, under the Plan, will be required to file a proof of claim within sixty (60) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

The Debtor does not have any unexpired leases.

## VI.    MEANS OF IMPLEMENTATION AND EXECUTION OF THE PLAN

**Means of Plan Payment; Assumptions and Reasonable Expectations.**

In accordance with the Plan, the Debtor intends to satisfy Creditor Claims with proceeds generated from the sale of the Leesburg Property, and with the commissions he receives for his real estate services.

Each Class of Claim, which are Classes 1 – 7, shall be paid according to their lien priorities and according to which Class fall under (e.g. Class 1 will be paid before Class 2), and shall be paid according to the Plan. Distributions under the Plan shall be made on the Distribution Date, provided that Court-approved Professionals may be paid such fees and expenses as are approved by the Court.  Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

The amount(s) each holder of an Allowed Claim will receive under the Plan and the timing of such payments is set forth in Article III of the Plan.

The Debtor has no General Unsecured Claims, because it pays its suppliers on a COD basis.

## *De Minimis* Distributions.

No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an Allowed Unsecured Claim.  Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

## Unclaimed Property.

If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the Claim and the Disbursing Agent shall not re-attempt to make such distribution to the holder of the Claim. Undistributed property shall be returned to the Debtor for distribution to Class 5 Creditors in accordance with the Plan.

## Preservation of Avoided Transactions for the Benefit of the Estate.

All transactions avoided or otherwise set aside pursuant to 11 U.S.C. §§ 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to 11 U.S.C. § 551 and applicable case law. Funds received from such transactions shall be distributed to Creditors

according to the priorities of the Code.  In the case of any lien which encumbered certain properties of the Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property.  However, all distributions made towards such deeds of trust shall be distributed not to the named beneficiary of such deeds of trust, but shall instead be paid to the Disbursing Agent for distribution to Creditors.

The Debtor will execute and deliver all documentation to the Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

**Procedure for Deficiency Claims.**

Any Creditor asserting a deficiency claim shall file a proof of claim within the time period specified in the treatment for such Creditor or be forever barred from asserting any deficiency claim, and such obligation shall be deemed paid in full.  In the event the Debtor obtains a Final Decree prior to the deadline for filing such deficiency claim, such Creditor shall inform the Disbursing Agent of such deficiency claim within the same time period.  In such event, a proof of claim form shall not be required, but the Creditor shall provide notice of such deficiency claim to the Disbursing Agent, in writing, containing the amount of such claim and an itemization of such claim.

**Procedure for Payment of Professionals.**

Professionals employed by the Debtor shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

Except as expressly stated in the Plan, or allowed by a Final Order of the Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code. No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

Confirmation of the Plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all Pre-Petition claims and any and all Post-Petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548 and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to one or more Creditors as part of the Debtor's Plan. Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including, without limitation, actions to seek turnover of Estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

Administrative Claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

All objections to Claims, fee applications, and adversary proceedings will be filed with the Court within sixty (60) days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against Secured Creditors relating to the payoff and/or satisfaction of their Secured Claims.

**Absolute Priority Rule.**

The "absolute priority rule" bars the retention of the Debtor's equity interest in its property over the objection of any Class of senior Unsecured Claims. The Debtors has unsecured claims (Classes 5 – 7), however, these classes are unimpaired, and will be paid in full within thirty (30) days of the Debtor's receipt of his $180,000 commission.

**Default Remedies.**

In the event that Debtor fails to comply with the terms and conditions of the Plan, the Debtor may be in default under the Plan.  In the event of a default under the Plan by the Debtor, Creditors and parties in interest retain all available remedies under the Bankruptcy Code, including, but not limited to, the right to move for enforcement of the Plan, the right to move the Court to dismiss the Debtor's case, the right to move the Court for relief from the automatic stay and injunction, and/or the right to move to convert the case to a Chapter 7 liquidation.  In the event that the case is dismissed before the Debtor receives a discharge, Creditors will have the right to legally pursue the Debtor for the full amount of their respective Allowed Claims plus interest and applicable costs and expenses, and the Creditors will not be limited to the amount that was to be paid under the confirmed Plan.

**Risk Factors.**

The risk factor in this case is that the Debtor continues to produce enough income with which to pay its creditors under the Plan.

**VII.   ACCEPTANCE OR REJECTION OF PLAN; EFFECT
        OF REJECTION BY AN IMPAIRED CLASS**

**Each Impaired Class Entitled to Vote Separately.**

Each Impaired Class of Claims shall be entitled to vote separately as a Class to accept or reject the Plan. Classes 5, 6, and 7 are unimpaired classes. Accordingly, they will be deemed to have accepted the Plan, and they will not receive a ballot.

**Acceptance by a Class of Creditors.**

In accordance with 11 U.S.C. § 1126(c), and except as provided in 11 U.S.C. § 1126(e), a Class of Claims shall have accepted the Plan if the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of that Class have timely and properly voted to accept the Plan.

**Claimants Entitled to Vote.**

Holders of Impaired Claims shall be entitled to vote:

(1)   If such Claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed, then the Claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such Claim has been filed or listed on the Debtor's schedules; or

(2)   If such Claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018; or

(3)   If such Claim has been filed in an undetermined amount, in which case the Creditor shall not be entitled to vote unless the Debtor and the holder of the Claim agree on an amount for voting purposes or the Court enters an order setting the amount of the Claim that the Creditor may ballot.

Any entity holding two or more duplicate Claims shall be entitled to vote only one Claim.

**Confirmation Hearing.**

As stated above, the Court has set a hearing to determine whether the Plan has been accepted by the requisite number of Creditors and whether the other requirements for confirmation of the Plan have been satisfied.

**Acceptances Necessary to Confirm the Plan.**

At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each Impaired Class.  Under 11 U.S.C. § 1126, an Impaired Class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an Impaired Class, the Court must also determine in accordance with 11 U.S.C. § 1129(a)(7)(A)(ii) that Class members will receive or retain property with a value, as of the Effective Date of the Plan, not less than the amount that such Class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

**Confirmation of Plan Without the Necessary Acceptances.**

Section 1129(b) of the Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all Impaired Classes. In order to be confirmed without the requisite number of acceptances of each Impaired Class, the Court must find that at least one Impaired Class has accepted the Plan without including any acceptance of the Plan by an Insider, and that the Plan does not discriminate unfairly against, and is otherwise fair and equitable to, each Class of Claims or interests which is Impaired under, and has not accepted, the Plan. In the event that any Class votes against the Plan, the Debtor hereby requests and moves the Court, under the section of this Plan entitled "Cramdown", for confirmation pursuant to the "cramdown" provisions of 11 U.S.C.

§ 1129(b).  In connection with any request for confirmation under 11 U.S.C. § 1129(b), the Debtor shall be allowed to modify the proposed treatment of the Allowed Claims in any Class that votes against the Plan consistent with 11 U.S.C. § 1129(b)(2)(A).

## VIII.   "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any Class of Creditors Impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each Class of Claims or interests that are Impaired under the Plan and that the Court confirm the Plan without such acceptances by the said Impaired Classes.  The Debtor also requests that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any Secured Creditor, at a valuation hearing under 11 U.S.C. § 506, to be conducted at the same time as the hearing on confirmation of the Plan.

## IX.   DISCLAIMER

All parties are advised and encouraged to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan or before voting on any other matter as provided for herein.

Statements made in this Plan are qualified in their entirety by reference to the Plan itself, the Disclosure Statement, and all Exhibits annexed thereto. The statements contained in this Plan are made only as of the date hereof. No assurances exist that the statements contained herein will be correct at any time hereafter.

The information contained in this Plan is included herein for purposes of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to determine how

to vote on the Plan.  No representations concerning the Debtor are authorized by the Debtor other than as set forth in this Plan.  Any other representations or inducements made to solicit your acceptance that are not contained in this Plan should not be relied upon by you in arriving at your decision to accept or reject the Plan.

With respect to adversary proceedings, contested matters, other actions, or threatened actions, this Plan shall not constitute or be construed as an admission of any fact or liability, stipulation or waiver; rather, this Plan shall constitute statements made in connection with settlement negotiations.

This Plan shall not be admissible in any non-bankruptcy proceeding involving the Debtor or any other party.  Furthermore, this Plan shall not be construed to be conclusive advice on the legal effects, including but not limited to the tax effects, of the Debtor's Plan of Reorganization. You should consult your legal or tax advisor on any questions or concerns regarding the tax or other legal consequences of the Plan.

The information contained in this Plan is not the subject of a certified audit.  The Debtor's records are dependent upon internal accounting methods and procedures. Although substantial efforts have been made to be complete and accurate, the Debtor is unable to warrant or represent the full and complete accuracy of the information contained herein.

**Representations Limited.**

No representation concerning the Debtor, particularly regarding future business operations or the value of the Debtor's assets, has been authorized by the Debtor except as set forth in this Plan and the Disclosure Statement.  You should not rely on any other representations or inducements offered to you to secure your acceptance or decide how to vote on the Plan.  Any person making representations

or inducements concerning acceptance or rejection of the Plan should be reported immediately to Counsel for the Debtor.

While every effort has been made to provide the most accurate information available, the Debtor are unable to warrant or represent that all information is without inaccuracy. No known inaccuracies are set forth in the Plan or in the Disclosure Statement. Further, certain information contained herein consists of projections of future performance. While every effort has been made to ensure that the assumptions are valid and that the projections are as accurate as can be made under the circumstances, the Debtor has not undertaken to certify or warrant the absolute accuracy of any projections. There are risks and this Plan and the Disclosure Statement highlight some of those risks.

## X.      PAYMENTS UNDER PLAN ARE IN FULL AND
##          FINAL SATISFACTION OF DEBT

The payments and distributions made pursuant to the Plan will be in full and final satisfaction, settlement, release, and discharge, as against the Debtor, of any and all Claims and interests against the Debtor, as defined in the Bankruptcy Code, including, without limitation, any Claim accrued or incurred on or before the Confirmation Date, whether or not (i) a proof of claim or interest is filed or deemed filed under 11 U.S.C. § 501, (ii) such Claim or interest is allowed under 11 U.S.C. § 501, or (iii) the holder of such Claim or interest has accepted the Plan.

## XI.     POTENTIAL MATERIAL FEDERAL TAX CONSEQUENCES

The Debtor is an individual, cash basis, calendar year taxpayer.

The Bankruptcy Estate of the Debtor is a separate taxpaying entity which was created upon the filing by the Debtors of a Chapter 11 Petition. The Bankruptcy Estate generally succeeds to an individual taxpayer's tax attributes as of the end of the taxable year preceding the year of filing. If the Debtor elects a short taxable year, the Bankruptcy Estate will succeed to the Debtor's tax attributes as

of the end of the short taxable year. In addition, if the short taxable year is elected, any tax due for

such period will be a Claim against the Bankruptcy Estate with priority over the Claims of Unsecured

Creditors, and any refund attributable to such period will be an asset of the Estate subject to the Claims

of the Creditors. Regardless of whether the short-year election is made, the Debtor will be taxed on all

income earned before the filing of the Chapter 11 Petition, and the Bankruptcy Estate will be taxed on

all subsequent income through the conclusion of the Case. The Debtor must make any short-year

election no later than the 15th day after the fourth full month after the date of filing.

The Bankruptcy Estate is generally taxed as if it were an individual, except that it may choose

either a calendar or a fiscal year. The Debtor will succeed to any remaining tax attributes upon the

termination of the Bankruptcy Estate.

The Debtor's debts will be paid at full face value under the Plan. As a result, the Bankruptcy

Estate will not recognize cancellation of indebtedness income in an amount equal to the discharged

debt because there will be no discharged debt. There will be no cancellation of indebtedness income

excluded from the Bankruptcy Estate.

Payments to be made under the Plan will produce the following income tax effects:

Administrative expenses paid by the Debtor will be deductible by the Debtor.

Payment of the principal portion of Secured Claims generally will not be deductible by

the Debtor, as it has already been included in the basis of the assets securing the debt or applied

towards payment of previously deducted expenses.

Payment of interest attributable to Secured Claims will be deductible by the Debtor

when paid.

Payment of Unsecured Claims will be deductible when paid by the Debtor to the extent

the payment thereof would produce a deduction outside of Chapter 11.

Any tax reported on the Bankruptcy Estate's income tax return(s) will be a claim against the Bankruptcy Estate with priority over the claims of Unsecured Creditors, and any refund attributable to such period will be an asset of the Estate subject to the Claims of the Creditors.

For Federal income tax purposes, loan Creditors who receive principal payments under the Plan generally will recognize capital gain or loss in an amount equal to the difference between the amount of the principal payments and the Creditor's basis in its Claim.

[NOTE: A creditor may have a basis in its Claim which is different from the face amount of the indebtedness as a result of charge-offs, or because it acquired its claim for something other than the face amount from the original lender.]

Any interest payments received by Creditors under the Plan will generate ordinary income to such Creditors, to the extent such amounts have not already been accrued.

A loan Creditor whose debt is significantly modified will be treated as having received a new debt instrument in exchange for the old one. This will be treated as a sale or exchange of the old debt for a new instrument with a value determined under IRS rules. This may result in the recognition of capital gain or loss by the Creditor in an amount equal to the difference between the value of the new instrument and the Creditor's basis in the claim.

Other Creditors of the Debtor who receive payments under the Plan will recognize federal taxable income in a manner consistent with the Debtor's methods of accounting for receipts of this nature.

Expenses incurred by Creditors in connection with the Plan, such as legal, accounting and administrative costs, should be deductible by the Creditors in accordance with the Debtor's methods of accounting. To the extent Creditors are subject to Virginia income tax, the Debtor's treatment for state

tax purposes will generally follow the federal treatment discussed above. The income tax treatment of Creditors in states other than Virginia is beyond the scope of this Amended Disclosure Statement

**CIRCULAR 230 NOTICE**: *To comply with requirements imposed by the United States Treasury Department and/or IRS, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. A formal and thorough written tax opinion would first be required for any tax advice contained in this communication to be used to avoid tax related penalties.  Please consult your own tax professional.*

## XII.   PROVISIONS FOR VOTING ON A PLAN

The Court has not yet confirmed the Plan.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

### *Objections to Confirmation of the Plan.*

Objections to Confirmation of the Plan must be filed with the Court no later than seven (7) days before the scheduled Confirmation hearing, and a copy of the Objection must be served upon the Debtors' Counsel at the address listed below.

### *Deadline for Voting to Accept or Reject the Plan.*

**This package contains a ballot for casting your vote to either accept or reject the Plan.**

If you are entitled to vote to accept or reject the Plan, you are <u>required</u> to vote using the ballot enclosed in the package.

---

**TO BE COUNTED, YOUR BALLOT MUST BE <u>ACTUALLY</u> RECEIVED
NO LATER THAN 5:00 P.M. LOCAL STANDARD TIME, SEVEN (7) DAYS PRIOR
TO THE SCHEDULED DATE OF THE PLAN CONFIRMATION HEARING.**

---

Ballots may be returned by United States mail, commercial overnight delivery, by email, or by facsimile, and should be delivered to:

>       Frank Bredimus
>       16960 Ivandale Road
>       Hamilton, VA 20158
>       Tel:  571-344-2278
>       Fax:  540-751-1008
>       Email:  fbredimus@aol.com

### *Identity of Person to Contact for More Information.*

**If you want additional information about the Plan, you should contact the Debtor's counsel by email, at the email address shown both above and at the end of this Disclosure Statement.  All available information will be provided upon request. Voting Provisions.**

The Plan will be deemed accepted by a Class if:

A.    The dollar amount of all Allowed Claims voting to accept the Plan represents at least two-thirds (2/3) of the total dollar amount of all votes cast by members of the Class; and,

B.    The number of Allowed Claims voting to accept the Plan represents more than one-half (1/2) of the total number of votes cast by members of the Class.

Under certain limited circumstances more fully described in Section 1129(b) of the Code, the Court may confirm the Plan by a "cramdown", notwithstanding rejection votes by more than one-third (1/3) in amount or more than one-half (1/2) in number of Creditors voting on the Plan.  The Debtor intends to seek confirmation under 11 U.S.C. § 1129(b) in the event any Class rejects the Plan.

## XIII.   ACCEPTANCE AND CONFIRMATION

The Bankruptcy Code requires that the Court, after notice, hold a hearing to consider confirmation of the Plan.  The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the confirmation hearing.

At the confirmation hearing, the Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Court will enter an Order confirming the Plan. These requirements include determinations by the Court that: (i) the Plan has classified Claims in a permissible manner; (ii) the Plan is in the "best interests" of all Creditors; (iii) the Plan is feasible; (iv) the Plan has been accepted by the requisite number and amount of Creditors in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances; (v) the Plan and its proponent comply with various technical requirements of the Bankruptcy Code; (vi) the Debtor has proposed the Plan in good faith; (vii) any payments made or promised in connection with the Plan are subject to the approval of the Bankruptcy Court as reasonable; and, (viii) the Plan provides specified recoveries for certain Priority Claims. The Debtor believes that all of these conditions have been or will be met prior to the confirmation hearing.

**Classification of Claims.**

The Bankruptcy Code requires that a plan place each Creditor's Claim in a Class with "substantially similar" claims. The Debtor believes that the Plan's classification of claims complies with the requirements of the Bankruptcy Code and applicable case law.

**The Best Interests Test.**

Notwithstanding acceptance of the Plan in accordance with 11 U.S.C. § 1126, the Court must find, whether or not any party in interest objects to confirmation, that the Plan is in the best interests of the Creditors. Bankruptcy courts have generally defined "best interests" as the Bankruptcy Code's requirement that, under any plan of reorganization, each member of an Impaired Class of Creditors must receive or retain, on account of its claim, property of a value, as of the effective date of the plan, that is not less than the amount such Creditor would receive or retain if the Debtor were liquidated

under Chapter 7 of the Bankruptcy Code.  The Debtor believes that the Plan is in the best interests of all Creditors.

To determine what Creditors would receive under a Chapter 7 liquidation of the Bankruptcy Estate, the dollar amount that would be generated from the immediate liquidation of the Debtor's assets needs to be considered.  The amount that would be available for the satisfaction of Claims would consist of the Debtor's interest, if any, in the net proceeds resulting from the disposition of the Estate's assets, augmented by the Debtor's interest in the cash on hand.  The Estate's interest would be further reduced by the amount of any Secured Claims, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business.  These calculations are set forth in a Liquidation Analysis attached to the Debtor's Disclosure Statement as *Exhibit B*.  If a Chapter 7 liquidation occurred at this time, the properties would not sell for their fair-market value, which would increase the possibility that Unsecured Creditors would not be repaid.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation.  Such costs would include the fees payable to a Chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants, and other professionals that such a trustee may engage to assist in the liquidation.

After satisfying Administrative Claims arising in the course of the Chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time the case was pending under Chapter 11, including compensation for the Debtor, attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

For the reasons discussed above, the Debtor has concluded that this Plan provides Creditors with a recovery that has a present value at least equal, but most likely far greater than the present

value of the distribution that such Persons would receive if the Estate were liquidated under Chapter

7 of the Bankruptcy Code.

---

**BECAUSE THE LIQUIDATION ANALYSIS AND ANY PROJECTIONS WHICH MAY BE PROVIDED BY THE DEBTOR ARE BASED UPON A NUMBER OF ASSUMPTIONS AND ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES THAT ARE BEYOND THE DEBTOR'S CONTROL, THERE CAN BE NO ASSURANCE THAT THE LIQUIDATION VALUES WOULD, IN FACT, BE REALIZED IN THE EVENT OF A LIQUIDATION UNDER CHAPTER 7 OR THAT THE FINANCIAL PROJECTIONS WILL BE REALIZED.  ACTUAL RESULTS MAY BE HIGHER OR LOWER THAN THOSE SHOWN IN THE EXHIBITS, POSSIBLY BY MATERIAL AMOUNTS.**

---

**Feasibility of the Plan.**

Section 1129(a)(11) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtor or any other successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Debtor believes in good faith that the sale of its properties will produce sufficient income to permit Debtor to meet its obligations under the Plan.

**Confirmation.**

The Plan may be confirmed if the holders of Impaired Classes of Claims accept the Plan. Classes of Claims that are Unimpaired are deemed to have accepted the Plan.  A Class is Impaired if the legal, equitable, or contractual rights attaching to the Claims or interests of that Class are modified other than by curing defaults and reinstating maturities or by full payment in cash.

The Bankruptcy Code defines acceptance of a plan by a Class of Claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of Allowed Claims in that Class. This calculation includes only those holders of Claims who actually vote to accept or reject the Plan.

Votes on the Plan are being solicited only from holders of Allowed Claims in Impaired Classes who are expected to receive distributions.

In the event that an Impaired Class does not accept the Plan the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if:

(i)    All other requirements of 11 U.S.C. § 1129(a) are satisfied; and

(ii)    The Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each Impaired Class that has not accepted the Plan.

The Debtor believes that the Plan is in the best interests of all Creditors.  Nevertheless, the Debtor has requested that the Court confirm the Plan over the rejection of any non-accepting Class, except Class 5, in the event that all other elements of 11 U.S.C. § 1129(a) are satisfied.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting Class are treated in a manner that is consistent with the treatment of other Classes whose legal rights are intertwined with those of the non-accepting Class, and if no Class receives payments in excess of those which it is legally entitled to receive.  The Debtor believes that, under the Plan, all holders of Impaired Claims are treated in a manner that is consistent with the treatment of other holders of Claims with which any of its legal rights are intertwined.  Accordingly, the Debtor believes that the Plan does not discriminate unfairly as to any Impaired Class of Claims.

The condition that a plan be "fair and equitable" generally requires that an Impaired Class that has not accepted the Plan must receive certain specified recoveries, as set forth in 11 U.S.C. § 1129(b)(2).  The Debtor believes that the Plan meets the thresholds specified in this section of the Bankruptcy Code.

## XIV.   ALTERNATIVES TO THE PLAN

If the Plan is not confirmed, the Debtor believes that it is unlikely any alternate plan of reorganization would be feasible or could contain terms more favorable to the Creditors than the Plan.  The Debtor believes that the Plan, as described herein, enables all Creditors to realize the maximum possible recovery under all circumstances.

## XV.   EFFECT OF CONFIRMATION

A.   *Property*.  Except as otherwise provided in the Plan, confirmation of the Plan vests all of the property of the Estate in the Debtor.

## XVI.   OTHER SOURCES OF INFORMATION AVAILABLE
##   TO CREDITORS AND PARTIES IN INTEREST

Additional reports, motions, affidavits, orders, and/or other documentation which might be of interest to any holder of a Claim against the Debtor in this proceeding are shown on the docket sheet maintained by the Clerk's office and are available through the Public Access to Court Electronic Records (PACER) website, www.pacer.com.  Copies of the docket sheet and actual items can be obtained from the office of the Clerk of the Bankruptcy Court:

    William C. Redden, Clerk of Court
    U.S. Bankruptcy Court
    200 S. Washington St.
    Alexandria, VA 22314-5405
    (703) 258-1200

## XVII. APPLICATION OF PLAN PAYMENTS

A. All payments made by the Debtor shall be applied as indicated in the respective treatment for each Class of Creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each Creditor. In the event that a Creditor is entitled to costs and/or attorneys

fees post-petition under Section 506(b) of the Code, such Creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorney's fees becoming part of the Creditor's allowed claim. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any Claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

B. Confirmation of the Plan shall impose a duty on the holders and/or servicers of Claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the Plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. Section 524(i).

## XVIII.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes set forth in Sections 105(a) and 1127 of the Code and, without limitation:

A.  To determine any and all objections to the allowance of Claims and/or interests;

B.  To determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

C.  To determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

D.  To determine all controversies and disputes arising under or in connection with the Plan;

E.  To determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

F.  To effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, any future sales of personal and/or real property retained by the Estate;

G.  To determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

H.  To determine all disputes regarding property of the Estate;

I.  To establish and adjust procedures for the orderly administration of the Estate;

J.  To determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

K.  To replace the debtor-in-possession with a Trustee for good cause shown.

## XIX. MISCELLANEOUS PROVISIONS

A.  Survival of Terms. The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.  Successors Bound. This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor and the holders of Claims and interests.

C.  Controlling Law. This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.  Further Assurance. If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions of the Plan, and the transactions contemplated herein, the holders of Claims and the

holders of Interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E.   Incorporation of Disclosure Statement. All the terms and conditions of the Disclosure Statement are restated and incorporated herein by reference.

## XX.  DISCHARGE

Upon completion of payments, the Debtor and the Estate will be discharged from all Claims and liens expressly provided for in the Plan.  The discharge will be fully effective against all Creditors regardless of whether they have voted to accept or reject the Plan and regardless of whether the Plan is confirmed by consent or by resort to the provisions of 11 U.S.C. § 1129(b).  However, even though no discharge will be entered until all payments are completed, the Debtor will seek to have the case closed upon substantial consummation under 11 U.S.C. § 1101(2).

Furthermore, the Debtor will seek to have the case automatically re-opened pursuant to 11 U.S.C. § 350(b) without payment of a fee upon the filing and service on all Creditors and the Bankruptcy Case Administrator of a Notice of Completion of Plan Payments and Request for Entry of Discharge, allowing all parties fourteen (14) days to file a response.

## XXI.  RECOMMENDATION AND CONCLUSION

THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE GREATEST RECOVERY TO CREDITORS AND IS IN THE BEST INTERESTS OF ALL CREDITORS.  THE DEBTOR THEREFORE RECOMMENDS THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN.

DATED:    May 26, 2017          Respectfully submitted,
THOMAS GIBSON JEWELL
  /s/  Thomas Gibson Jewell


  /s/  Frank Bredimus
Frank Bredimus

*Counsel for the Debtor*
The Law Office of Frank Bredimus, PLC
P.O. Box 535
Hamilton, VA 20159
VSB # 28793
Tel:  (571) 344-2278
Fax:  (540) 751-1008
Email:  fbredimus@aol.com