UNTED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In Re:                          :
                                :
THOMAS G. JEWELL,               :          Case No. 17-11625-KHK
                                :
          Debtor.               :
                                :
_____ :
                                :
DOROTHY M. JEWELL,              :
                                :
          Movant,               :
                                :
v.                              :
                                :
THOMAS G. JEWELL,               :
                                :
          Respondent.           :
                                :
_____ :

## MOTION OF DOROTHY M. JEWELL FOR RELIEF FROM THE AUTOMATIC STAY, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

COMES NOW, Movant DOROTHY M. JEWELL, by counsel, pursuant to Fed. R. Bankr.

P. 4001, and moves this Court to lift the automatic stay to allow Mrs. Jewell to proceed against

the Debtor in the pending state court action *Dorothy M. Jewell v. Thomas G. Jewell, Case No.*

*CL00109910-00.  Exhibit 1 - Petition for Discovery Pursuant to Va. Code Ann. § 64.2-1614.*

The relief sought herein constitutes an emergency due to the urgent need for the state court's

appointment of a Guardian *Ad Litem* and for the appointment of a temporary conservator for Mrs.

Jewell.

### FACTUAL BACKGROUND

On May 12, 2017, the Debtor, by his counsel Frank Bredimus, Esquire, filed his Petition

in Bankruptcy under Chapter 11.  Until recently, Mrs. Jewell was not notified of his filing

despite the fact that she is the sole beneficiary during her lifetime under the *Clarence G. Jewell*

*Trust*, which is identified in the chapter 11 petition as a creditor of the Debtor.

Mrs. Jewell is a 93 year-old woman. Her relatives include her two sons, Thomas Jewell

(the Debtor) and Gary Jewell. On October 8, 2002, Mrs. Jewell executed the *Durable Power of*

*Attorney of Dorothy M. Jewell*, appointing the Debtor as her attorney-in-fact. *Exhibit 2.* The

Debtor served in that capacity until June 9, 2017, when Mrs. Jewell removed him as attorney-in-

fact due to his mishandling of her funds as alleged herein. *Exhibit 3 - Revocation of Power of*

*Attorney.*

**Durable Powers of Attorney and Withdrawal of Mrs. Jewell's Funds**

On or about June 5, 2017, Mrs. Jewell had several financial accounts that the undersigned

counsel is aware of, including the following:

    i.      United Bank checking account no. ******1272

    ii.     BB&T checking account no. *********1785

    iii.    United Bank Certificate of Deposit account no. *******3045

    iv.    United Bank Certificate of Deposit account no. *******4789

    v.     United Bank Certificate of Deposit account no. *******4797

    vi.    United Bank Certificate of Deposit account no. *******2485

On June 5, 2017, the Debtor withdrew all funds in the aforesaid accounts without Mrs.

Jewell's knowledge. Prior to withdrawing these funds, the balance on these accounts totaled

more than $428,000.00. On all four Certificate of Deposit accounts, the named beneficiary upon

Mrs. Jewell's death was Gary Jewell.

On June 6, 2017, Mrs. Jewell first discovered that the Debtor had withdrawn all of her

funds when she learned from her bank that her checking account was overdrawn due to two

small bills that she had attempted to pay by writing checks to the Town of Leesburg for $79.05 and $37.50 for Verizon. These checks were returned for nonsufficient funds. Not only was Mrs. Jewell unable to pay her bills, but she was also left with no funds for groceries and other household expenses. Fortunately, Mrs. Jewell's close friend had purchased groceries and other household necessities for Mrs. Jewell until she received her next social security benefits check.

On June 9, 2017, on the advice of counsel, Mrs. Jewell revoked the October 8, 2002 power of attorney under which the Debtor was the agent. *See Exhibit 3.* Mrs. Jewell executed a new durable power of attorney appointing her accountant, Jeffrey A. Bolyard, as her agent. *Exhibit 4 - Durable Power of Attorney of Dorothy M. Jewell dated June 26, 2017.* She also retained the undersigned counsel to "find [her] money."

**State Court Action for Discovery**

On June 27, 2017, Mrs. Jewell's counsel, pursuant to *Va. Code Ann. § 64.2-1612 (H)*, sent a request for disclosure of all receipts, disbursements, and transactions to the Debtor via certified mail-return receipt requested and received confirmation of delivery from the United States Postal Service on June 30, 2017. *Exhibit 5 – Section 64.2-1612 (H) Request.* Soon thereafter, the Debtor retained counsel, Brien A. Roche, Esquire, who sent Mrs. Jewell's counsel a series of correspondences.

In Mr. Roche's July 13, 2017 letter, Mr. Roche implied that Mrs. Jewell lacked mental capacity to revoke the 2002 durable power of attorney, which appoints the Debtor as agent. *Exhibit 6 – Roche's 7/13/2017 Letter (Letter from Mrs. Jewell's primary care physician referenced in Mr. Roche's letter is not attached).* Mr. Roche further insisted that the June 26, 2017 durable power of attorney appointing Jeffrey Bolyard as agent is invalid. Mrs. Jewell has diminished capacity, however, she was not mentally incapacitated at the time of executing the

June 9, 2017 revocation of the 2002 power of attorney and appointing Mr. Bolyard as agent

under the June 26, 2017 durable power of attorney.

Under *Va. Code Ann. § 64.2-1612 (H)*, the Debtor was required to comply with Mrs.

Jewell's request for all receipts, disbursements, and transactions by July 30, 2017 or to

correspond with Mrs. Jewell's counsel regarding his inability to comply with Mrs. Jewell's

request within the 30-days time period. The Debtor failed to comply with Mrs. Jewell's request

for disclosure or to correspond with her or her attorney regarding his inability to comply within

the 30-day time period.

Having received no response from the Debtor, other than Mr. Roche's July 13, 2017

letter, Mrs. Jewell's counsel, with Mrs. Jewell's expressed consent, filed the *Petition for

Discovery* against the Debtor pursuant to *Va. Code Ann. § 64.2-1614 (B)(1),* which states,

> Whether or not supplemental relief is sought in the proceeding, where an agent has
> violated duties of disclosure imposed by § 64.2-1612, any person to whom such duties
> are owing may, for the purpose of obtaining information pertinent to the need or
> propriety of (i) instituting a proceeding under Chapter 20 (§ 64.2-2000 et seq.); (ii)
> terminating, suspending, or limiting the authority of the agent; or (iii) bringing a
> proceeding to hold the agent, or a transferee from such agent, liable for breach of duty or
> to recover particular assets or the value of such assets of a principal or deceased principal,
> petition a circuit court for discovery from the agent of information and records pertaining
> to actions taken pursuant to a power of attorney.

Upon being served with the *Petition for Discovery*, Mr. Roche sent another letter, dated

August 21, 2017, to the undersigned "suggest[ing]" that the undersigned "end the suit

immediately." Attached to Mr. Roche's letter, was a hand written letter purportedly from Mrs.

Jewell, addressed "To whom it may concern" stating that she did not authorize anyone to begin

legal action against her son Thomas G. Jewell, and that she "terminate[s] all business

relationships between Jeffrey A. Bolyard, CPA and The Clark Law Firm." *Exhibit 7 – Roche's

8/21/2017 Letter and Exhibit 8 - purported Dorothy Jewell Letter.*

**State Court Motion for Guardian Ad Litem**

On August 23, 2017, the undersigned received another letter from Mr. Roche wrongly accusing the undersigned of sending Mr. Bolyard and his assistant to Mrs. Jewell's home to have her sign a retainer agreement. *Exhibit 9 – Roche's 8/23/2017 Letter.*  In this letter, the Debtor's counsel also states, "You now have a clear directive from Mrs. Jewell terminating your services." In this letter, Mr. Roche also demands that he be notified as to whether the undersigned will nonsuit the case or withdraw from representing Mrs. Jewell.  It is unclear as to whether the purported handwritten letter from Mrs. Jewell stating, "I hereby terminate all business relationships between Jeffrey A. Bolyard, CPA and The Clark Law Firm" is the clear directive that Mr. Roche speaks of, or whether Mr. Roche actually communicated with Mrs. Jewell and he himself is communicating to counsel the termination of the attorney-client relationship between the undersigned and Mrs. Jewell.

Regardless of what Mr. Roche believes Mrs. Jewell's directives to be, the undersigned reasonably believes, based upon all surrounding circumstance, that Mrs. Jewell is being unduly influenced by the Debtor to revoke Mr. Bolyard's appointment as agent under the June 26, 2017 durable power of attorney, dismiss the *Petition for Discovery*, and to terminate counsel's representation of Mrs. Jewell so that the Debtor can avoid having to disclose all receipts, disbursements, and transactions to his principal pursuant to *Va. Code Ann. § 64.2-1612 (H)*, avoid having to answer to his principal as to where her funds are, and avoid having to answer to the *Petition for Discovery.*

There is a reasonable basis to believe that the Debtor has something to hide in his handling of Mrs. Jewell's financial affairs, and therefore, it is imperative that Mrs. Jewell be made aware of it so as to protect her assets if the Debtor has not already dissipated them.

Rule 1.14 (b) of the Virginia Rules of Professional Conduct states,

When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian ad litem, conservator or guardian.

Since there exists, what Mr. Roche represents as Mrs. Jewell's writing and clear directive to terminate the attorney-client relationship, revoke Mr. Bolyard's appointment as agent, and dismiss the *Petition for Discovery*, the undersigned, on August 24, 2017 filed in the state court, the *Motion to Appoint a Guardian Ad Litem* for Mrs. Jewell in order to have an independent investigation and recommendation to the state court, and in order to protect Mrs. Jewell's rights, assets, and her well being during the pendency of these proceedings.

On August 25, 2017, the day after filing the *Motion to Appoint a Guardian Ad Litem*, the undersigned received the *Suggestion in Bankruptcy* from the Debtor's bankruptcy attorney, Frank Bredimus, Esquire, who, based upon a prior written correspondences from him to Mrs. Jewell and to others concerning Mrs. Jewell, appears to have formerly represented Mrs. Jewell. *Exhibit 10* – *F. Bredimus' 11/16/2016 Letter to Mrs. Jewell, 11/16/16 Letter to E. Moxley, 12/30/16 Letter to M. Kinney.* The undersigned first learned of the Debtor's chapter 11 filing upon receiving the *Suggestion in Bankruptcy* on August 25, 2017. The undersigned replied to the Debtor's bankruptcy attorney, Mr. Bredimus, asking him if it was his contention that the *Petition for Discovery* filed in the state court is subject to the automatic stay. Mr. Bredimus replied that since Mrs. Jewell made the Debtor her agent under the 2002 durable power of attorney in 2002, Mrs. Jewell's *Petition for Discovery* is a "pre-petition claim" subject to the automatic stay. *Exhibit 11 - Bredimus 8/31/2017 Email ("Dorothy M. Jewell's claim starts on*

*October 8, 2002 and continues to the present."*).  On August 31, 2017, Mr. Bredimus filed the

Amended Schedule F identifying Mrs. Jewell as a creditor.

On August 31, 2017, the undersigned counsel, her agent Mr. Bolyard, and his assistant,

attempted to visit Mrs. Jewell at her home to discuss the foregoing matters.  Mrs. Jewell declined

the visit.  Mr. Bolyard's assistant, Tracy Anderson, who has known Mrs. Jewell for more than 20

years, and who has assisted Mrs. Jewell in making doctor's visits, daily errands, and providing

general companionship to Mrs. Jewell, found Mrs. Jewell's refusal to meet with her attorney, her

agent, and Tracy as "very unusual."  When counsel, Mr. Bolyard, and Ms. Anderson returned to

their respective offices, Ms. Anderson received a telephone call from Mrs. Jewell a few hours

later.  Ms. Anderson, suspecting that the Debtor was present and listening in on the telephone

conversation, told Mrs. Jewell that she would call her right back after she talked to the

undersigned.  Ms. Anderson immediately called the undersigned.  The undersigned asked Mr.

Bolyard to drive over to her home down the street to see if the Debtor's vehicle was parked in

Mrs. Jewell's driveway indicating that he was there with Mrs. Jewell.[1]  According to Mr.

Bolyard, the Debtor's vehicle was in Mrs. Jewell's driveway.  Counsel informed Mr. Bolyard

and Ms. Anderson that he would not engage in any substantive discussion on a telephone call

with Mrs. Jewell while the Debtor was present in her home.  Immediately thereafter, counsel

then called Mrs. Jewell to arrange for a time in which Mrs. Jewell could meet him at his office or

at Mr. Bolyard's office.  Mrs. Jewell sounded frustrated, upset, confused, and repeatedly asked

what is going on with the lawsuit, and asked why Tommy, the Debtor, could not come to the

meeting.  Then counsel heard whispers from a male voice on the telephone line directing her

what to say.  Counsel explained to Mrs. Jewell that he could not communicate with her while the

---

[1] According to Mrs. Anderson and Gary Jewell, the Debtor rarely visited Mrs. Jewell prior to these events.  Lately,
however, he visits her frequently.

Debtor was listening on the line and telling her what to say ("Tell him . . ."). Suddenly, the Debtor got on the line and repeatedly stated in a raised voice, "My mom doesn't have to talk to you if she doesn't want to. I need to know whether or not we're going to court tomorrow." The undersigned terminated the call.

On August 28, 2017, counsel received a telephone call from the Debtor's brother, Gary Jewell. Mr. Jewell inquired as to what is going on with his mother and the Debtor because, according to Gary Jewell, the Debtor telephoned him asking him to call to Mr. Bredimus because Mr. Bredimus has several documents that he needs Gary to sign. According to Gary Jewell, the Debtor explained to him that one of those documents included a statement that Mrs. Jewell is mentally incapacitated.

In prior meetings with Mrs. Jewell, Mrs. Jewell explained to the undersigned that the Debtor often pressures her, and that she recalls the Debtor pressuring her into writing and signing documents. Gary Jewell has also explained to the undersigned that the Debtor has a way of intimidating his mother.

Mrs. Jewell is in need of a guardian ad litem, the ability to have confidential communications with her counsel, and a temporary conservator as soon as possible - all of which the state court could promptly grant, but for the automatic stay and Debtor's continuing influence over Mrs. Jewell.

### LEGAL STANDARD

*Title 11 of the United States Code Section 362 (a)* states,

(a)  Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the

debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

*Title 11 United States Code Section 101(5)* states,

(5)  The term "claim" means –

(A)  right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B)  right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

*ARGUMENTS*

I.    **Section 362 (a) (1) Is Inapplicable Because Dorothy Jewell's State Court Action Was Commenced After The Filing Of The Petition For Bankruptcy, And The Grounds For The Relief Sought Therein Arose After The Filing Of The Petition For Bankruptcy.**

In Mr. Bredimus' email to the undersigned, the Debtor contends that Mrs. Jewell's claim arose prepetition by virtue of the fact that the 2002 durable power of attorney appointing the Debtor as agent was executed prior to the filing of Debtor's chapter 11 petition. The Debtor's argument stands for the proposition that the commencement of the relationship between the creditor and debtor establishes whether a claim is prepetition or post petition. His argument is inconsistent with the plain language of Section 362(a).

Under Section 362(a), the commencement or continuation of an action or proceeding against the Debtor is stayed if it was or could have been commenced before the commencement of his chapter 11 petition, which was May 12, 2017. The Debtor, as Mrs. Jewell's fiduciary, failed to comply with *Va. Code Ann. § 64.2-1612*, by failing to disclose all records, receipts, disbursements or transaction conducted on behalf of Mrs. Jewell when requested to do so – on or before July 30, 2017. *Exhibit 5 – Section 64.2-1612 (H) Request)*. Due to his failure, Mrs. Jewell filed an action, pursuant to *Va. Code Ann. § 64.2-1614*, to be allowed to conduct discovery against the Debtor. The cause of action arose on or about July 30, 2017, when the Debtor failed to comply within 30 days of the request for records, receipts, disbursements or transactions.

Mrs. Jewell's cause of action against the Debtor for discovery under *Va. Code Ann. § 64.2-1614* did not, and could not have been, commenced before the commencement of the Debtor's Chapter 11 Petition. The request to disclose all records, receipts, and disbursements had not been made to the Debtor until 2017. Prior to the filing of the bankruptcy petition, the

10

Debtor had not engaged in any conduct alleged in the state court action, which Mrs. Jewell is

aware of, that would have given Mrs. Jewell cause to file the state court action for discovery

## II.    Section 362 (a) (1) Is Inapplicable Because The Basis Of Dorothy Jewell's State Court Action is Not a Claim.

The substance of Mrs. Jewell's action against the Debtor in the state court is one for

discovery – not money damages.  Mrs. Jewell does not assert a right to payment nor an equitable

remedy for breach of performance that give rise to a right of payment.  She asserts the right to

know from the Debtor, her former agent and fiduciary, what he did with her money.  It is likely

that once she obtains discovery in that regard, she will assert a claim and right to recovery, but

the current action filed in the state court is one for discovery – not a claim for payment.

## III.    There Is Substantial Risk That Mrs. Jewell Will Be Significantly Prejudiced If Immediate Relief From The Automatic Stay Is Not Granted; Neither The Debtor Nor The Debtor's Estate Will Be Prejudiced By The Relief Sought Herein.

As a fiduciary, if the Debtor would simply share his handling of Mrs. Jewell's funds, and

thereby show that he has not done anything improper with her money, there would be no need

for the state court action, and no need for this motion.  As a fiduciary, if the Debtor would simply

comply with his statutory requirement to report his handing of Mrs. Jewell's finances, there

would be no need for the state court action or this motion.  Unfortunately, however, the Debtor is

determined to keep Mrs. Jewell in the dark with respect to her finances.  He is also determined to

see that she is not represented by counsel, including the appointment of a guardian *ad litem*.  He

continues to engage in conduct that discourages Mrs. Jewell's communication with counsel and

discourages further inquiry into the whereabouts of her funds by unduly influencing her to write

notes attempting to fire her counsel and revoke her current agent under a current and valid power

of attorney.  If relief from the automatic stay is not granted, Mrs. Jewell is at great risk of taking

action, under the direction of the Debtor, against her own interest.

The Debtor on the other hand, would suffer no prejudice if the Court should grant relief

from the automatic stay. Mrs. Jewell's action for discovery in the state court has no bearing on

the Debtor's bankruptcy estate. The state court action for discovery seeks information as to his

handling of her finances in his capacity as her agent. It is not an action for money damages, and

will not affect his plan for reorganization.

WHEREFORE, DOROTHY M. JEWELL respectfully requests that the Court enter an

order lifting the automatic stay to (a) allow Mrs. Jewell to proceed with the state court action,

*Dorothy M. Jewell v. Thomas G. Jewell*, Case No. CL00109910-00, pending in the Circuit Court

of Loudoun County, including proceeding on the motion to appoint a guardian ad litem and

motion to appoint a temporary conservator for Mrs. Jewell (b) file any other action in the state

court to recover funds if discovery in the aforesaid case reveals that that the Debtor

misappropriate her funds, and (c) grant such other and further relief as the Court deems just and

proper.

Respectfully submitted,

DOROTHY M. JEWELL,

By Counsel,

    /s/ Chong C. Park
Chong C. Park, VSB 45733
Clark, Park & Dennis, P.C.
Market Station
108-E South Street, S.E.
Leesburg, Virginia 20175
Tel 703.443.0001
Fax 703.443.1081
cpark@theclarkfirm.com
*Counsel for Dorothy M. Jewell*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have on this 8th day of September 2017, caused a copy of the foregoing *Motion of Dorothy M. Jewell for Relief From the Automatic Stay* to be served on all necessary parties by electronically filing the foregoing with the Clerk of the Court using CM/ECF System, and/or by mailing via U.S. First-Class Mail to the following:

Capital One
Attn: General Correspondence
P.O. Box 30285
Salt Lake City, UT 84130-0285

Clarence G. Jewell Trust
c/o Frank Bredimus, Esquire
The Law Office of Frank Bredimus
P.O. Box 535
Hamilton, Virginia 20159
*Counsel for Debtor/ Trustee*

Credit One Bank
P.O. Box 98873
Las Vegas, NV 89193-8873

Jack Frankel, Esquire
Office of the U.S. Trustee
115 South Union Street
Suite 210
Alexandria, Virginia 22314

M. Christine Maggard, Esquire
Brock & Scott, PLLC
484 Viking Drive, Suite 203
Virginia Beach, VA 23452

Frank Bredimus, Esquire
The Law Office of Frank Bredimus
P.O. Box 535
Hamilton, Virginia 20159
fbredimus@aol.com
*Counsel for Debtor*

Judy A. Robins, Esquire
Office of the U.S. Trustee
115 South Union Street
Suite 210
Alexandria, Virginia 22314

    /s/ Chong C. Park
Chong C. Park

VIRGINIA:

### IN THE CIRCUIT COURT OF LOUDOUN COUNTY

DOROTHY M. JEWELL,                              :

      Petitioner,                              :

    v.                                              :          Case No.: *CL00109910-00*

THOMAS G. JEWELL, as agent under the           :
*Durable Power of Attorney*
*of Dorothy M. Jewell*                          :
**Serve:** Thomas G. Jewell                     :
      114 Chesterfield Place, SW               :
      Leesburg, Virginia 20175                 :

      Respondent.                              :

### PETITION FOR DISCOVERY PURSUANT TO *VA. CODE ANN. § 64.2-1614*

COMES NOW, Petitioner DOROTHY M. JEWELL, by counsel, and petitions this

Court for discovery pursuant to *Va. Code Ann. § 64.2-614*.  In support thereof, Petitioner

states as follows:

    1.    On October 8, 2002, Dorothy M. Jewell executed the *Durable Power of*

*Attorney of Dorothy M. Jewell*, appointing Thomas G. Jewell as her attorney-in-fact.

    2.    On June 27, 2017, Mrs. Jewell, by counsel, sent her request for disclosure

of all receipts, disbursements, and transactions to Thomas Jewell via certified mail-

return receipt requested and received confirmation of delivery from the United States

Postal Service on June 30, 2017.  See attached letter, certified mailing receipts, and

delivery confirmation, labeled *Exhibits A*, *B*, and *C*, respectively.

    3.    Relevant parts of *Va. Code Ann. § 64.2-1612(B)* state that an agent has

the duty to, "Keep a record of all receipts, disbursements, and transactions made on

behalf of the principal."

**EXHIBIT**

1

4.      Relevant parts of *Va. Code Ann. § 64.2-1612(H)* state,

"Except as otherwise provided in the power of attorney, an agent shall disclose receipts, disbursements or transactions conducted on behalf of the principal if requested by the principal…If so requested, within 30 days the agent shall comply with the request or provide a writing or other record substantiating why additional time is needed and shall comply with the request within an additional 30 days."

5.      Thomas Jewell was required to comply with Mrs. Jewell's request by July 30, 2017 or to correspond with Mrs. Jewell's counsel regarding his inability to comply with Mrs. Jewell's request within the 30-day time period.

6.      Thomas Jewell has refused to comply with Mrs. Jewell's request for disclosure or to correspond with her attorney regarding his inability to comply within the 30-day time period.

7.      Pursuant to *Va. Code Ann. § 64.2-1614 (B)(1)*,

"Whether or not supplemental relief is sought in the proceeding, where an agent has violated duties of disclosure imposed by § 64.2-1612, any person to whom such duties are owing may, for the purpose of obtaining information pertinent to the need or propriety of (i) instituting a proceeding under Chapter 20 (§ 64.2-2000 et seq.); (ii) terminating, suspending, or limiting the authority of the agent; or (iii) bringing a proceeding to hold the agent, or a transferee from such agent, liable for breach of duty or to recover particular assets or the value of such assets of a principal or deceased principal, petition a circuit court for discovery from the agent of information and records pertaining to actions taken pursuant to a power of attorney."

WHEREFORE, Petitioner DOROTHY M. JEWELL, respectfully requests that the Court order that Respondent Thomas G. Jewell, as agent under the *Durable Power of Attorney of Dorothy M. Jewell* dated October 8, 2002, provide Petitioner with discovery disclosing all receipts, disbursements, or transactions conducted on her behalf within 30 days, and order that upon completion of the discovery, Respondent pay Petitioner's

reasonable attorney's fees associated with obtaining the discovery and for bringing this action.

Respectfully submitted,

DOROTHY M. JEWELL

By Counsel,

_____
Chong C. Park, VSB 45733
Clark, Park & Dennis, P.C.
Market Station
108-E South Street, S.E.
Leesburg, Virginia 20175
cpark@theclarkfirm.com
Tel  703.443.0001
Fax 703.443.1081
*Counsel for Petitioner*

3

Gorham S. (Rory) Clark✦★

Chong C. Park★

Sherri L. Dennis★



# THE
# CLARK LAW FIRM
### CLARK, PARK & DENNIS

✦ *also admitted in Maryland*

★ *also admitted in D.C.*

June 27, 2017

<u>By First-Class Mail</u> (Certified -- Return Receipt Requested)
Thomas G. Jewell,
as agent under the Durable Power of Attorney
of Dorothy M. Jewell
114 Chesterfield Place, SW
Leesburg, Virginia 20175-2700

      Re:   *Request for Accounting*

Dear Mr. Jewell:

    I represent Dorothy M. Jewell on all matters related to your handling of her affairs under the *Durable Power of Attorney of Dorothy M. Jewell*, dated October 8, 2002 and the *Dorothy M. Jewell* Trust, dated April 8, 2002. Pursuant to *VA Code Ann. § 64.2-1612*, on behalf of Dorothy M. Jewell, I hereby request all receipts, disbursements, and transactions that you have made on Mrs. Jewell's behalf. Please provide these records to my office promptly.

            Yours truly,

            Chong C. Park

enclosures
cc:  Kathleen B. Horne, Esq.

**EXHIBIT**

**A**

MAIL CORRESPONDANCE TO LEESBURG OFFICE
108 South Street, S.E. | Suite E | Leesburg, VA 20175
MEETING LOCATIONS
Fairfax | Manassas | Winchester

P (703) 443-0001 | F (703) 443-1081

WWW.THECLARKFIRM.COM







EXHIBIT

B

# USPS Tracking® Results

FAQs › (http://faq.usps.com/?articleId=220900)

Track Another Package  +

Remove ✕

**Tracking Number:** 70153010000011413331

**Delivered**

## Product & Tracking Information

See Available Actions

**Postal Product:**
First-Class Mail®

**Features:**
Certified Mail™
Return Receipt

See tracking for related item: 9590940227586351901951
(/go/TrackConfirmAction?tLabels=9590940227586351901951)

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| June 30, 2017, 2:42 pm | Delivered | LEESBURG, VA 20175 |

Your item was delivered at 2:42 pm on June 30, 2017 in LEESBURG, VA 20175.

| | | |
|---|---|---|
| June 29, 2017, 6:22 pm | Available for Pickup | LEESBURG, VA 20175 |
| June 29, 2017, 1:37 pm | Notice Left (No Authorized Recipient Available) | LEESBURG, VA 20175 |
| June 29, 2017, 8:35 am | Out for Delivery | LEESBURG, VA 20175 |

See More ⌄

## Available Actions

| Text Updates | ⌄ |
|---|---|
| Email Updates | ⌄ |

See Less ⌃

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

FAQs (http://faq.usps.com/?articleId=220900)


EXHIBIT
C

# POWER OF ATTORNEY

| | |
|---|---|
| **PRINCIPAL** | **DOROTHY M. JEWELL** |
| **AGENT** | **THOMAS G. JEWELL** |
| **SUCCESSOR AGENT\*** | **GARY A. JEWELL** |

*\*to act only upon death, resignation, inability to act or cessation to act of the agent*

I, as principal, declare and appoint the agent named above to serve as my agent under this durable general power of attorney, to act for me and in my name, place and stead, and to do and execute all or any acts, deeds and things that may be legally done or executed by an agent under a written power of attorney. If my named agent resigns, dies or is otherwise unable to serve as my agent, then I appoint the successor agent named above as my agent, to have all authority, powers and discretion granted to my original agent. It is my specific and express intent that my agent be empowered to act with respect to all of my property as fully and effectively in all respects as I myself could do if I were personally present, but in all ways in a fiduciary capacity on my behalf. I specifically declare that this power of attorney shall not terminate upon my disability or incapacity and that it be considered a durable power of attorney.

I reserve the right to revoke or amend this power of attorney by written instrument of revocation or amendment or in any other manner permitted by law. If this power of attorney has been recorded in the public records, then the instrument of revocation or amendment also shall be filed or recorded in the same manner. My agent may resign at any time by the execution of a written resignation delivered to me, or, if I am mentally incapacitated, by delivery to any person with whom I am residing or who has the care and custody of me.

This power of attorney applies to all property and rights that I now have or may have in the future. All acts and decisions by my agent shall be in the sole and uncontrolled discretion of my agent as is considered appropriate by my agent for my best interests. My agent's powers and rights shall include, but not be limited to, the power and authority to:

• Use generally any of my money or other real or personal property for my support and maintenance and for the support and maintenance of any person whom I have undertaken to support or to whom I owe an obligation of support, in accordance with the same standard of living as I may have provided in the past, as my agent considers best.



EXHIBIT
2

• Have access to all of my property, including access to any safe deposit box rented by me, and to have access to and possession of my will, trust agreements, deeds, insurance policies, contracts, and other important documents.

• Demand, receive, collect and hold any and all monies, securities, tangible or intangible, personal and real property of any nature belonging to me, or in which I may have any interest or claim.

• Deal generally and in all respects without restriction in and with any property of any nature in which I may have any right, title or interest.

• Disburse my money in such manner, at such times and for such purposes as my agent considers appropriate, for the expenses related to, and repairs and maintenance of, my home and any other real estate or tangible personal property owned by me or in which I may have any interest.

• Operate, manage, control and lease real estate or tangible personal property owned by me or in which I may have any interest and collect, demand and receive the income from these properties and exercise in all respects general control and supervision over my real estate and tangible personal property interests, including any pets.

• Exercise general supervision and control over my securities and other intangible personal property of any nature and collect the dividends, interest and other income from these property interests and sell, exchange or otherwise dispose of these property interests and reinvest the proceeds.

• Carry bank accounts for me in my name and in such banks as my agent considers best; transfer any savings account to a joint checking account or any checking account to a joint savings account and make deposits of my money in such accounts and disburse these funds on my agent's signature.

• Sign on my behalf any note, bond, deed, deed of trust, obligation, contract or other instrument in connection with the acquisition or disposition of real estate and release deeds of trust securing any bonds or notes payable to me by deed of release or other instrument and mark the notes or bonds canceled.

• Endorse all checks or other instruments payable to me and sign in my name and execute on my behalf all checks, notes, bonds, deeds, deeds of trust, assignments, transfers, proxies, and other legal documents of any nature and file or record such items as appropriate.

• Prepare, sign and file any tax returns or other required governmental filings and make any elections with respect to my tax returns.

2

• Sell, at public or private sale, or exchange any part of my real estate or personal property for such consideration and upon such terms as my agent considers best and execute and deliver all deeds and other instruments for the conveyance and transfer of the same, with covenants and warranties as my agent considers best.

• Demand, sue for, collect, receive and give binding releases for my money or other rights of any nature and commence, prosecute and defend all actions and other legal and administrative proceedings pertaining to any of my property interests and the items set forth in this power of attorney.

• Purchase, maintain, surrender, collect, cancel and otherwise deal with:

•• life insurance, annuities and insurance type financial products of any kind on my life or the life of any person in whom I have an insurable interest,

•• liability insurance protecting me, my estate, and my dependents against third party claims,

•• hospital insurance, medical insurance, Medicare supplement insurance, custodial care insurance, disability income insurance and any other similar type of coverage for me or any of my dependents, and

•• casualty insurance insuring assets of mine or my dependents against loss or damage due to fire, theft, or other commonly insured risk.

• Pay all insurance premiums, select any options under any such insurance policies described above, increase coverage under any such policies, borrow against any such policies, pursue all insurance claims on my behalf, adjust insurance losses, and the foregoing powers shall apply to private and public plans, and group policies, including, but not limited to, Medicare, Medicaid, SSI and Worker's Compensation. My agent is authorized to decrease coverage under or cancel any such policies, to receive and make such disposition of the cash value on termination of any such policies as my agent shall deem appropriate. My agent is authorized to designate and change beneficiaries of insurance policies insuring my life and beneficiaries under any annuity contract in which I have an interest and consistent with my existing estate plan as described below.

• Consistent with my existing estate plan, and acting solely in my best interests, establish one or more trusts for my benefit and transfer any of my property to such trust or to any existing trust already established by me, consent to gift splitting, make gifts to my family, either directly or in trust, continue any gifting program already established by me, and disclaim any interest to which I may be entitled or become entitled.

3

• Consistent with my existing estate plan and the restrictions set forth in the preceding paragraph, with consistency to be determined in the sole discretion of my agent, make and change beneficiary and other elections and designations under any life insurance policy owned by me and any individual retirement plan account or other qualified or unqualified retirement plan account or benefit. Any third party insurance company or retirement plan trustee may rely fully on the decision of my agent that a change is consistent with my existing testamentary plan.

• Make all arrangements to provide medical attention and services for me including choosing a physician, choosing a hospital or nursing home, the unrestricted power to determine upon the advice of a physician whether I am in need of surgery, authorize or withhold such surgery, and provide such other care, comfort, maintenance and support as my agent may determine appropriate and in my best interests, provided, however, that the authority of my designated agent under my health care power of attorney or advance medical directive shall take priority in the event of a conflict.

• Make advance arrangements for my funeral and the disposition of my remains following my death, and all related arrangements, including anatomical gifts, as my agent deems advisable. I will seek to communicate my wishes to my agent with respect to these matters and my agent should rely upon such communication.

• Waive attorney-client, physician-patient and similar privileges in order to facilitate consultations between my agent and my attorney, physician, and other advisors.

• Employ on my behalf, compensate, and terminate, the services of attorneys, accountants, and other advisors and consultants as my agent determines are appropriate for my benefit.

• Establish a new residence and domicile for me and redirect my mail to an address selected by my agent.

• Delegate and assign any or all of the powers set forth in this power of attorney to any person or entity selected by my agent.

• Sign my name to any instrument or paper in order to effect any of the powers set forth in this power of attorney.

My agent shall not have any personal liability or personal responsibility to me, my estate, or to any other person by reason of any action which may be taken under this power, or by reason of any failure to act pursuant to this power, provided such action or inaction is in good faith. My agent has no duty to make my property income producing, to increase the value of my estate, or to diversify my investments. My agent will have the right to reimbursement for all reasonable expenses incurred on my behalf while acting pursuant to this power of attorney.

4

Unless waived, my agent may receive reasonable compensation for actual services provided by my agent in acting on my behalf under this power of attorney. I ratify and confirm all lawful acts done by my agent pursuant to this general power of attorney.

**WITNESS** my signature and seal this 8th day of October, 2002.

PRINCIPAL:

*Dorothy M. Jewell*     (SEAL)
DOROTHY M. JEWELL

COMMONWEALTH OF VIRGINIA
CITY OF WINCHESTER, TO-WIT:

The foregoing instrument was acknowledged before me this 8th day of October, 2002, by Dorothy M. Jewell.

My Commission expires May 31, 2003.

*Debra K. Carbaugh*
Notary Public

*This instrument was prepared by:*
*Owen and Truban, PLC*
*103 North Braddock Street, P. O. Box 267*
*Winchester, Virginia  22604*

JWT/shg/4139
8/2/02

5

# Revocation of Power of Attorney

I, Dorothy M. Jewell, hereby revoke the following power of attorney previously granted by me as Principal:

    (i)    Power of Attorney dated October 8, 2002, appointing Thomas G. Jewell as my agent and Gary A. Jewell as successor agent.

Dated June 9, 2017

_____
Dorothy M. Jewell, Principal

COMMONWEALTH OF VIRGINIA      )
COUNTY OF LOUDOUN           )

This instrument was acknowledged before me on June 9, 2017, by Dorothy M. Jewell.

JONATHAN EDWARD NOBLE
Notary Public
Commonwealth of Virginia
My Commission Expires   11/30/2019
Commission ID# 7568251

_____
Notary Public


EXHIBIT
3

# DURABLE POWER OF ATTORNEY
## OF
## DOROTHY M. JEWELL

## June 26, 2017

LAW OFFICES
### LEGACY ELDER LAW CENTER
THE CLARK LAW FIRM
108 SOUTH STREET, S.E.
SUITE E
LEESBURG, VIRGINIA 20175
(703) 988-7975



EXHIBIT
4

# Durable Power of Attorney
## of
# Dorothy M. Jewell

I, Dorothy M. Jewell of 405 Mosby Drive, Leesburg, VA 20175, am creating a durable power of attorney intended to comply with Virginia law. I hereby revoke all powers of attorney previously granted by me as Principal and terminate all Agency relationships created by me except:

(i)    powers granted by me under any Health Care Durable Power of Attorney;

(ii)   powers granted by me on forms provided by financial institutions granting the right to write checks on, deposit funds to, and withdraw funds from accounts to which I am a signatory;

(iii)  powers granting access to a safe deposit box.

## Article One
## Appointment of Agent

### Section 1.01    Initial Agent

I appoint Jeffrey A. Bolyard, CPA, to serve as my Agent.

### Section 1.02    Authority to Delegate

Any serving Agent may delegate, in writing, any of the Agent's authority granted under this Durable Power of Attorney. The serving Agent making a delegation under this provision may revoke the delegation at any time.

### Section 1.03    Self-Dealing by Spouse or Descendant

This Section only applies if my spouse (if I become married) or a descendant of mine is serving as my Agent.

My agent may engage in acts of self-dealing, even if state law restricts acts of self-dealing. Unless expressly prohibited by another provision of this Durable Power of Attorney, my Agent may enter into transactions on my behalf in which my Agent is personally interested, so long as the terms of such transaction are fair to me. For example, my Agent may purchase property from me at its fair market value without court approval.

### Section 1.04    No Person Under 21 Years of Age May Serve as Agent

No person named as my Agent or successor Agent may serve until that person has attained the age of 21 years.

### Section 1.05      Prior or Joint Agent Unable to Act

A successor Agent, or an Agent serving jointly with another Agent, may establish that the acting Agent or joint Agent is no longer able to serve as Agent by signing an affidavit that states that the Agent is not available or is incapable of acting. The affidavit may (but need not) be supported by a death certificate of the Agent, a certificate showing that a guardian or conservator has been appointed for the Agent, a letter from a physician stating that the Agent is incapable of managing his or her own affairs, or a letter from the Agent stating his or her unwillingness to act or delegating his or her power to the successor Agent.

# Article Two
# Effectiveness of Appointment - Durability Provision

### Section 2.01      Effectiveness

The authority granted to my Agent under this Durable Power of Attorney shall be effective immediately upon signing.

### Section 2.02      Durability

The authority granted to my Agent under this Durable Power of Attorney shall not be affected by my subsequent disability, incompetency, incapacity, or lapse of time.

### Section 2.03      Termination of Durable Power of Attorney

This Durable Power of Attorney shall expire at the earlier of:

(i)  my death (except for post-death matters allowed under state law); or

(ii)  my revocation of this Durable Power of Attorney.

# Article Three
# General Powers

I grant my Agent the powers described in this Article so that my Agent may act on my behalf. In addition, my Agent may do everything necessary to exercise the powers listed below.

My Agent may exercise any power described in this Durable Power of Attorney on my behalf with respect to any real property I now own or may acquire in the future, including, but not limited to, the real property described in Schedule A attached hereto.

### Section 3.01      Real and Personal Property Sales and Purchases

Unless specifically limited by the other provisions of this Durable Power of Attorney, my Agent may:

    (i)  sell, exchange, and convey any interest I own in any kind of property, real or personal, including homestead property under Virginia law or the laws of any other state, and determine the terms of sale and grant options with regard to sales;

    (ii)  dispose of sales proceeds on my behalf as my Agent determines is appropriate;

    (iii)  buy any kind of property, real or personal, including homestead property under Virginia law or the laws of any other state, and determine the terms for buying property and may obtain options to buy property;

    (iv)  arrange to insure purchased property, and otherwise arrange for its safekeeping;

    (v)  borrow money for the purposes described in this Section and to secure the loan in any manner my Agent determines is appropriate, and repay the loan from my funds;

    (vi)  pay for any purchases made; and

    (vii)  repay any cash advanced from my credit cards.

## Section 3.02    Real Property Management

My Agent may manage any real property I now own or may acquire in the future, including my personal residence and homestead property under Virginia law or the laws of any other state.  Unless specifically limited by the other provisions of this Durable Power of Attorney, my Agent may:

    (i)  declare, create, or execute a homestead on my personal residence under Virginia law or the laws of any other state; and terminate, abandon, release, or give a waiver on any interest I have in a homestead;

    (ii)  lease and sublease property for any period, and grant options to lease or subdivide property, even if the term of the lease, sublease, or option extends beyond the term of this Durable Power of Attorney;

    (iii)  eject and remove tenants or other persons from property, and recover the property by all lawful means;

    (iv)  collect and sue for rents;

    (v)  execute occupancy agreements on my behalf;

    (vi)  pay, compromise, or contest tax assessments and apply for tax assessment refunds;

    (vii)  subdivide, partition, develop, dedicate property to public use without consideration, and grant or release easements over my real property;

    (viii)  maintain, protect, repair, preserve, insure, build upon, improve, demolish, abandon, and alter all or any part of my real property;

    (ix)  employ laborers;

    (x)  obtain or vacate plats and adjust boundaries;

(xi)  adjust differences in the property's value on exchange or partition by giving or receiving consideration;

(xii)  release or partially release real property from a lien;

(xiii)  enter into any contracts, covenants, and warranty agreements regarding my real property that my Agent considers appropriate; and

(xiv)  encumber property, including homestead property under Virginia law or the laws of any other state, by mortgage or deed of trust.

## Section 3.03    Tangible Personal Property Management

My Agent may manage any tangible personal property I now own or may acquire in the future.  Unless specifically limited by the other provisions of this Durable Power of Attorney, my Agent may:

(i)  lease and sublease property for any period, and grant options to lease or subdivide property, even if the term of the lease, sublease, or option extends beyond the term of this Durable Power of Attorney;

(ii)  recover my property by all lawful means;

(iii)  collect and sue for rents;

(iv)  take possession of and use my property in order to exercise any authority granted in this Power of Attorney;

(v)  pay, compromise, or contest tax assessments and apply for tax assessment refunds;

(vi)  maintain, protect, repair, preserve, insure, improve, destroy, and abandon all or any part of my property; and

(vii)  grant security interests in my property.

My Agent may accept tangible personal property as a gift or as security for a loan.

## Section 3.04    Residence and Tangible Personal Property

Without limiting any other authority granted in this Durable Power of Attorney, if my Agent determines that I will never be able to return to my residence from a hospital, hospice, nursing home, convalescent home, or similar facility, my Agent may sell, lease, sublease, or assign my interest in my residence on terms and conditions that my Agent considers appropriate.

As it relates to items of tangible personal property remaining in my residence, my Agent may:

(i)  store and safeguard any items, and pay all storage costs;

(ii)  sell any items that my Agent believes I will never need again on terms and conditions that my Agent considers appropriate; or

(iii)  transfer custody and possession of any item to the person named in my estate planning documents as the person to receive that item upon my death.

### Section 3.05      Bank Accounts and Banking Transactions

My Agent may establish bank accounts of any type in one or more bank institutions that my Agent may choose. My Agent may modify, terminate, make deposits to, write checks on, make withdrawals from (including by electronic funds transfer), and grant security interests in any account in my name or to which I am an authorized signatory, except accounts held by me in a fiduciary capacity. In exercising this authority, it does not matter whether or not the account was established by me or for me by my Agent. My Agent is authorized to negotiate, endorse, or transfer any check or other instrument with respect to any account, to contract for any services rendered by any bank or financial institution, and to execute, on my behalf as principal, any agency or power of attorney forms furnished by a bank with respect to accounts with the bank that appoints the bank or any person as my agent.

My Agent is authorized to access, establish, cancel, or continue online bank accounts (through the Internet or other similar method) and conduct online banking transactions of any kind as authorized in this Section.

### Section 3.06      Investments and Investment Transactions

My Agent may invest and reinvest all or any part of my property in any other property of whatever type, real or personal, tangible or intangible, and whether located inside or outside the geographic borders of the United States and its possession or territories. Unless specifically limited by the other provisions of this Durable Power of Attorney, my Agent may:

   (i)   invest in securities of all kinds, limited partnership interests, real estate or any interest in real estate whether or not productive at the time of investment, commodities contracts of all kinds, interests in trusts including investment trusts;

   (ii)   participate in common, collective, or pooled trust funds or annuity contracts;

   (iii)   sell or otherwise terminate any investment made by me or on my behalf, and establish and terminate savings and money market accounts at banks and other financial institutions;

   (iv)   establish and terminate accounts with securities brokers and use brokerage accounts to make short sales and to buy on margin, and pledge any securities held or purchased in brokerage accounts as security for loans and advances made to the account;

   (v)   access, establish, cancel, or continue online investment accounts (through the Internet or other similar method) and conduct online investment transactions of any kind as authorized in this Section;

   (vi)   establish and terminate agency accounts with corporate fiduciaries; and

   (vii)   employ and fire financial and investment advisors.

### Section 3.07        Securities

My Agent may exercise all rights regarding securities that I own now or in the future. Specifically, my Agent may:

    (i)   buy, sell, and exchange all types of securities and financial instruments, including, but not limited to, stocks, bonds, mutual funds, commodity futures contracts, and call and put options on stocks and stock indexes;

   (ii)   receive certificates and other evidences of ownership with regard to securities;

  (iii)   hold securities in bearer or uncertified form and use a central depository, clearing agency, or book-entry system such as The Depository Trust Company, Euroclear, or the Federal Reserve Bank of New York;

  (iv)   execute stock powers or similar documents on my behalf and delegate to a transfer agent or similar person the authority to register any stocks, bonds, or other securities into or out of my name or nominee's name;

   (v)   place all or any part of my securities in the custody of a bank or trust company or in the name of its nominee;

  (vi)   employ a broker-dealer as custodian for my securities and register the securities in the name of the broker-dealer or its nominee;

  (vii)   exercise voting rights with respect to securities in person or by proxy, enter into voting trusts, and consent to limitations on the right to vote;

 (viii)   participate in any reorganization, recapitalization, merger, or similar transaction; and

  (ix)   exercise any subscription rights, option rights (whether or not qualified under the Internal Revenue Code) or other rights to which I am entitled now or in the future, or to sell and dispose of these rights, and, if required, to sign my name to rights, warrants, or other similar instruments.

### Section 3.08        Business Operations

My Agent may continue operating and managing any business in which I now or later own an interest for the period of time and in any manner my Agent considers appropriate. Unless specifically limited by the other provisions of this Durable Power of Attorney, my Agent may:

    (i)   act as a director, general or limited partner, or associate or officer of the business;

   (ii)   select and vote for directors, partners, associates, and officers of the business and enter into owners' agreements with other owners of any business in which I have an interest;

  (iii)   execute agreements and amendments to agreements necessary to the operation of the business including, but not limited to, stockholder

agreements, partnership agreements, buy-sell agreements, and operating agreements for limited liability companies;

(iv)  hire and fire employees;

(v)  pay employees' salaries and provide for employee benefits;

(vi)  employ legal, accounting, financial, and other consultants;

(vii)  continue, modify, terminate, renegotiate, and extend any contracts with any person, firm, association, or corporation;

(viii)  execute business tax returns and other government forms required for my business;

(ix)  pay all business related expenses;

(x)  transact business for me in my name and on my behalf;

(xi)  contribute additional capital to the business;

(xii)  change the name or the form of the business;

(xiii)  incorporate the business;

(xiv)  enter into a partnership agreement with other persons;

(xv)  join in a plan to reorganize or consolidate my business, or merge my business with any other business;

(xvi)  establish the value of the business under "buy-out" or "buy-sell" agreements to which I am a party;

(xvii)  create, continue, or terminate retirement plans for my business' employees and make contributions required by those plans;

(xviii)  advance money or other property to the business and make loans of cash or securities to the business as my Agent considers appropriate; and

(xix)  borrow for the business and secure any loans with business assets or my personal assets.

My Agent may sell, liquidate, or close a business upon terms my Agent considers appropriate, including a sale in exchange for cash, a private annuity, and an installment note or any combination of those arrangements.

### Section 3.09    Partnership Interests

My Agent may manage any general, limited, or special partnership interest I own now or in the future. Unless specifically limited by the other provisions of this Durable Power of Attorney, my Agent may:

(i)  exercise any right, power, privilege, or option I may have or may claim under any contract with the partnership;

(ii)  modify or terminate my interest on terms and conditions my Agent considers appropriate;

    (iii)   enforce the terms of the partnership agreement for my protection by instituting or maintaining any action, proceeding or otherwise as my Agent considers appropriate; and

    (iv)   defend, arbitrate, settle, or compromise any action or other legal proceeding to which I am a party because of my membership in the partnership.

## Section 3.10    Obligations

My Agent may collect all rights and benefits to which I am entitled now or in the future, including, but not limited to rights to, cash payments, property, debts, accounts, legacies, bequests, devises, dividends, and annuities.    In collecting my obligations, unless specifically limited by the other provisions of this Durable Power of Attorney, my Agent may demand, sue for, arbitrate, settle, compromise, receive, deposit, expend for my benefit, reinvest, or otherwise dispose of these matters as my Agent determines appropriate.

## Section 3.11    Bankruptcy

My Agent may act for me with respect to bankruptcy or insolvency, whether voluntary or involuntary, concerning me or some other person, or with respect to a reorganization, receivership, or application for the appointment of a receiver or trustee that affects an interest I have in any property or other thing of value.

Specifically, and without limiting the preceding, my Agent may act for me with respect to filing for bankruptcy, and in support of such filing may—

    (i)   employ counsel to represent me;

    (ii)   select any exemptions available to me;

    (iii)   determine which debts to reaffirm;

    (iv)   make any decisions regarding repayment and reorganization plans;

    (v)   discuss my affairs with credit-counseling and debtor-education services;

    (vi)   discuss my affairs with and employ debt-restructuring services; and

    (vii)   take any other actions to further my interests.

## Section 3.12    Legal Actions

My Agent may institute, supervise, prosecute, defend, intervene in, abandon, compromise, adjust, settle, dismiss, and appeal from any and all legal, equitable, judicial, or administrative hearings, actions, suits, or proceedings involving me in any way.  This authority includes, but is not limited to, claims by or against me arising out of property damage or personal injury suffered by or caused by me or under circumstances such that the resulting loss may be imposed on me.  My Agent may otherwise engage in litigation involving me, my property, or my legal interests, including any property, interest, or person for which or whom I have or may have any responsibility.  However, my Agent may not agree to or enter into arbitration of any kind.

### Section 3.13    Fiduciary Positions

My Agent may resign or renounce for me any fiduciary position I hold now or in the future including personal representative, trustee, guardian, attorney-in-fact, and officer or director of a corporation and any governmental or political office or position. In so doing, my Agent may file an accounting with the appropriate court of competent jurisdiction or settle on the basis of a receipt, release, or other appropriate method.

### Section 3.14    My Spouse

If I become married, my Agent (including my spouse acting as my Agent) may deal with my spouse on my behalf. In dealing with my spouse, my Agent may transfer, transmute, partition, or exchange any of my property interests, whether separate or community property, between my spouse and me. My Agent may enter into and execute on my behalf marital property agreements, partition or exchange agreements, transmutation agreements, or community property agreements, and may enforce, amend, or revoke any such agreements between my spouse and me, but only with respect to rights and obligations in property owned by my spouse, by me, or by both of us, and with respect to reclassification of ownership, management, and control of such property.

### Section 3.15    My Support

My Agent may do anything reasonably necessary to maintain my customary standard of living, including:

(i)   maintain my residence by paying all operating costs, including, but not limited to, interest on mortgages or deeds of trust, amortization payments, repairs, and taxes, or by purchasing, leasing, or making other arrangement for a different residence;

(ii)  provide normal domestic help;

(iii) provide clothing, transportation, medicine, food, and incidentals; and

(iv)  make all necessary arrangements, contractual or otherwise, for my care at any hospital, hospice, nursing home, convalescent home or similar establishment, or in my own residence should I desire it, and assure that all of my essential needs are met wherever I may be.

### Section 3.16    Support of Dependents

My Agent may make payments as my Agent deems necessary for the health, education, maintenance or support of my spouse (if I become married) and those my Agent determines to be dependent on me for support.

### Section 3.17    Recreation and Travel

My Agent may, at my expense, allow me to engage in recreational and sports activities as my health permits, including travel.

### Section 3.18    Advance Funeral Arrangements

My Agent may make advance arrangements for my funeral and burial, including a burial plot, marker, and any other related arrangements that my Agent considers appropriate.

### Section 3.19    Memberships

My Agent may establish, cancel, continue, or initiate my membership in organizations and associations of all kinds.

# Article Four
# Additional Powers

In addition to the powers specified in Article Three, my Agent has the powers specified in this Article. If a power specified in this Article conflicts with a power specified in Article Three, the power specified in this Article controls.

### Section 4.01    Fixtures and Personalty

My Agent may engage in real estate transactions or transactions which involve any proprietary lease or stock evidencing my ownership of a cooperative apartment, including all fixtures and articles of personal property used in connection with the real property (my Agent may include such property in the deeds, mortgages, agreements, and any other instruments to be executed and delivered in connection with real estate transactions and which may be described in said instruments with more particularity).

### Section 4.02    Insurance Transactions

My Agent may engage in insurance transactions, including applying for, maintaining, canceling, paying premiums on, increasing or decreasing coverage, collecting, borrowing from, transferring ownership, surrendering and/or purchasing insurance policies.

### Section 4.03    Estate Transactions

My Agent may engage in estate transactions, including Receipt, Release, and Refunding Agreements and Waivers and Consents.

### Section 4.04    Disclaimers and Statutory Elections

My Agent may make statutory elections and renounce or disclaim any interest in property by testate or intestate succession or by inter vivos transfer consistent with Virginia law.

### Section 4.05    Powers of Appointment

My Agent may exercise in whole or in part, or decline to exercise, or disclaim my rights under any special or general power of appointment or any rights retained by me in any trust or otherwise, whether or not any such trust or other instrument was created by me or others.

### Section 4.06        Trusts

My Agent may create and fund inter vivos trusts of any type, whether revocable or irrevocable, and whether or not I am a beneficiary. With respect to any trust created by me or on my behalf, my Agent may amend, modify, revoke, or terminate the trust. Further, my Agent may add property to an existing or subsequently created trust, and accept transfers or distributions from any trustee of any trust, including any trust over which I have a right of receipt or withdrawal, whether as grantor, beneficiary, or otherwise.

Also, and without limiting the authority granted to my Agent in this Section, my Agent may:

   (i)   create and fund a sole-benefit trust in accordance with United States Code, Title 42, Section 1396p(c)(2)(B);

   (ii)  create and fund a self-settled special needs trust in accordance with United States Code, Title 42, Section 1396p(d)(4)(A);

   (iii) create and fund a qualified income trust in accordance with United States Code, Title 42, Section 1396p(d)(4)(B) if such a trust should be deemed necessary to qualify me for Medicaid benefits, and make arrangements for the diversion of my income to such a trust as necessary to comply with applicable Medicaid rules and regulations; and

   (iv)  sign all necessary documents to allow me to join any trust qualifying under United States Code, Title 42, Section 1396p(d)(4)(C) and transfer any portion of my assets to such trust.

### Section 4.07        Safe-Deposit Boxes

My Agent may enter any safe-deposit box or other place of safekeeping standing in my name alone or jointly with another and to remove the contents and to make additions.

### Section 4.08        Business Succession Agreements

My Agent may enter into buy/sell agreements and any other business succession agreements.

### Section 4.09        Loans and Notes

My Agent may engage in all dealings with respect to loans and forgiveness of debts. My Agent may borrow money on such terms as my Agent may decide in his or her sole discretion, on a secured or unsecured basis, and to execute all notes, mortgages, and other instruments relating to such, provided any such loan carries a fair market interest rate.

### Section 4.10        Annuities

My Agent may waive my right to be a beneficiary of a joint and survivor annuity, including a survivor benefit under a retirement plan. My Agent may withdraw from, transfer ownership, surrender, or purchase any commercial annuity, private annuity, or grantor retained annuity trust.

### Section 4.11   Government Agencies and Benefits

My Agent has the unrestricted power to deal with and obtain maximum entitlements and benefits relating to the Social Security Administration, Veterans Administration, Social Services Departments, Social Security Disability Insurance, Supplemental Security Income, Medicaid, Medicare, Worker's Compensation and all other government benefits or entitlement programs, including claims, planning for eligibility, and submission of applications and appeals. In this regard, my Agent is authorized to execute and deliver any power of attorney or authorization to act form requested or required by a governmental agency. This power shall impose no affirmative duty on my Agent to provide information and/or documentation to any government agency.

### Section 4.12   Deal with Tax Authorities

My Agent is authorized to:

   (i)   deal with tax authorities, to execute and sign on my behalf any and all Federal, state, local, and foreign income and gift tax returns (as authorized under Section 1.6012-1(a)(5) of Title 26 of the Code of Federal Regulations or under any state, local, or foreign authority), including estimated returns and interest, dividends, gains, and transfers, and to pay any taxes, penalties, and interest due thereon;

  (ii)   represent me or to sign an Internal Revenue Service Form 2848 (Power of Attorney or Declaration of Representative) or Form 8821 (Tax Information Authorization), or comparable authorization, appointing a qualified lawyer, certified public accountant, or enrolled agent (including my Agent, if so qualified) to represent me before any office of the Internal Revenue Service, state, local, or foreign taxing authority with respect to the types of taxes and years referred to above, and to specify on said authorization said types of taxes and years;

 (iii)   receive from or inspect confidential information in any office of the Internal Revenue Service, state, local, or foreign tax authority;

 (iv)   receive and deposit, in any one of my bank accounts, or those of any revocable trust of mine, checks in payment of any refund of Federal, state, local, or foreign taxes, penalties, and interest;

  (v)   execute waivers (and offers of waivers) of restrictions on assessment or collection of deficiencies in taxes and waivers of notice of disallowance of a claim for credit or refund;

 (vi)   execute consents extending the statutory period for assessment or collection of such taxes; to execute Offers in Compromise and Closing Agreements under Section 7121 or comparable provisions of the Internal Revenue Code, as amended, or any federal, state, local, or foreign tax statutes or regulations; and

 (vii)   delegate authority to, or substitute another representative for any one of those previously appointed by me or my Agent, and to receive copies of all notices and other written communications involving my federal, state, local, or foreign taxes at such address as my Agent designates.

### Section 4.13    HIPAA Authorization

My Agent, and any successor Agent appointed in this power of attorney, shall have the power and authority of a designated representative for all purposes under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. Section 1320d and 45 C.F.R. Parts 160-164. My Agent and successor Agent are authorized to execute releases and other documents necessary to obtain disclosure of individually identifiable health information, medical records, and patient files, including psychotherapy notes. This information includes, but is not limited to, any written opinion or assessment of my decision making capacity. This authorization and release apply to all information protected by HIPAA and shall only expire if I revoke this power of attorney.

### Section 4.14    Reimbursement of Health Care Agent

My Agent may reimburse my Agent under any health care directive, including but not limited to a Health Care Durable Power of Attorney, even if such Agent is my Agent, for any costs (including legal fees) reasonably incurred in or as a result of acting pursuant to such health care directive.

### Section 4.15    Employment of Professionals

My Agent may retain, discharge, and pay for, in the sole discretion of my Agent, the services of professionals, including, but not limited to, information technology experts, attorneys, accountants, financial planners, geriatric care managers, social workers, and any other health care professionals. My Agent is not obligated to retain or pay for any health care professional on my behalf.

### Section 4.16    Gifting Powers

Notwithstanding any other provision of this Durable Power of Attorney, my Agent may make gifts of any interest I have in real or personal property ("my property") to any person or entity, in any amount.

While gifts under this provision may be made to my Agent, only a Special Agent appointed under the provisions of Section 7.03 may make gifts to my Agent. Neither my Agent nor the Special Agent may make gifts to himself or herself, his or her estate, his or her creditors, or the creditors of his or her estate. The Special Agent appointed for this purpose must be an individual who is not related or subordinate to my Agent within the meaning of Section 672(c) of the Internal Revenue Code.

Unless otherwise specified above, the value of any gift made pursuant to this Section may exceed the annual dollar limits of the federal gift tax exclusion under Section 2503(b) of the Internal Revenue Code.

### Section 4.17    Gift-Splitting

If I become married, my Agent may make, join, and consent to gifts by my spouse pursuant to Section 2513 of the Internal Revenue Code, even if such gifts exceed my

aggregate annual gift tax exclusion amount under Section 2503(b) of the Internal Revenue Code.

### Section 4.18    Intent to Return Home

It is my intention to return home if I should be in a hospital, rehabilitation center, or nursing home, and my Agent shall take all steps, including, but not limited to, executing any document, affidavit, or Declaration of Intent to Return Home on my behalf, to effectuate the same.

### Section 4.19    Domicile

My Agent may change or maintain my domicile and/or residency for any and all purposes and take any and all actions to effectuate the foregoing.

### Section 4.20    Nomination of Conservator

I intend hereby to render unnecessary any future proceeding for a court-appointed Conservator in the event I become temporarily or permanently incapacitated or incompetent. Accordingly, I request, in the strongest possible terms, that any court that may receive or act upon a petition for the appointment of a Conservator should deny such petition so long as my Agent is acting under this power of attorney.

If a Conservator is ever appointed for me in spite of this request, I direct that the person serving, or named to serve, as my Agent under this power of attorney be named as my Conservator.

### Section 4.21    Business Activities

My Agent may invest in, contribute to, establish, create, and fund any existing or newly created partnership, corporation, limited liability company, limited liability partnership, limited partnership, or other entity and to exercise all rights pertaining thereto.

### Section 4.22    Marital Agreements and Designation of Spouse as Agent

If I become married, my Agent may enter into, modify, or amend any pre-nuptial or post-nuptial agreement to which I am or hereafter become a party. If a named Agent is my spouse, then this power of attorney as to that named Agent is automatically revoked, and that Agent is deemed to have resigned as Agent upon the filing of any separation or dissolution action between us.

### Section 4.23    Caregiver Agreements

My Agent may enter into, execute, modify, alter, or amend any contract or agreement (for example, a Caregiver Agreement or Personal Services Contract) pertaining to my medical, personal, or general care that I may require at my residence, assisted living facility, nursing facility, or in another's residence on my behalf. I expressly authorize my Agent to also serve as a caregiver under any such agreement and to be paid in accordance with the terms and conditions of such agreement, provided, however, that such services are compensated at fair market value.

### Section 4.24      Qualified Plans

Notwithstanding the provisions of Section 1.03 of this Durable Power of Attorney, my Agent may deal in all respects with any Qualified Plan or Individual Retirement Account that I may own and to make any and all available elections or beneficiary designations on my behalf. If I become married and my spouse is a participant in a Qualified Plan or Individual Retirement Account, I authorize my Agent to effect any waiver of my rights to any portion of said Plan or to any payout arrangement which may require my consent or approval by law, under any such Plan, or otherwise.

### Section 4.25      Enforcement Proceedings

My Agent may commence enforcement proceedings, at my expense, against any bank, savings and loan association, credit union, financial institution, brokerage firm, stock transfer agent, insurance company, title insurance company, or other person or entity that fails or refuses to honor this durable power of attorney.

### Section 4.26      Credit Cards

My Agent may use any credit card in my name; to make purchases on my behalf; to open a new credit card account and to close any existing credit card account.

### Section 4.27      Online Accounts, Digital Assets, and Digital Devices

Without limiting any other provision of this Durable Power of Attorney, and subject to the limitations of any other provision of this Durable Power of Attorney, my Agent has the powers described in this Section.

My Agent has full authority to deal with Online Accounts, Digital Assets, and Digital Devices of all kinds, wherever located. This authority includes, but is not limited to, the power to acquire, create, establish, access, control, modify, cancel, delete, continue, transfer, and take possession of such accounts, assets, and devices.

However, if I have used an online tool to direct the custodian of an Online Account, Digital Asset, or Digital Device to not disclose certain information, and if the online tool allows for the modification or deletion of that direction at all times, then such direction overrides the authority granted in this Section.

My Agent may request and change my access credentials to any Online Account, Digital Asset, and Digital Device (such as username, password, and secret question), and any third-party dealing with my Agent in good faith will be held harmless for releasing such access credentials.

For purposes of this Durable Power of Attorney, the following definitions apply:

#### (a)      Online Accounts

The term "Online Accounts" means accounts that are accessible through the Internet or other similar method, including, but not limited to: bank accounts; investment accounts; other financial accounts; accounts with health care providers; social media accounts (like LinkedIn, Facebook, and Twitter); gambling and poker accounts; accounts with publishers;

accounts for access to employee benefits; email accounts; accounts with Internet service providers; accounts to manage websites and website domain names; accounts with retail vendors; tax-preparation service accounts; affiliate marketing accounts; accounts with utility companies; user access accounts on third-party Digital Devices; and any other online account.

**(b)    Digital Assets**

The term "Digital Assets" means intangible personal property related to digital technology (whether located on a Digital Device or an Online Account), including, but not limited to: emails sent or received; text messages sent or received; other digital communications sent or received; digital music; digital photographs; digital videos; software licenses; social network accounts; file sharing accounts; online access to financial accounts; domain registrations; DNS service accounts; website hosting accounts; personal and commercial websites; tax preparation service accounts; online store accounts; affiliate marketing accounts; and other types of online accounts and digital items that currently exist or may exist as technology develops.

**(c)    Digital Devices**

The term "Digital Devices" means tangible personal property related to digital technology capable of storing Digital Assets or accessing Online Accounts, and includes, but is not limited to: desktop computers; laptop computers; tablet computing devices (tablets); other mobile computing devices; peripheral devices; hard disk drives; solid state drives; flash memory devices; other storage devices; mobile telephones; smartphones; and any other type of digital device that currently exists or may exist as technology develops.

## Section 4.28    Domestic Pets

My Agent may make reasonable expenditures for the care, maintenance, support, and general welfare of my domestic pets, if any. Specifically, and without limitation, my Agent may consent to and make reasonable expenditures for medical treatment, boarding, and kennel care of any of my domestic pets. I authorize any and all payments from my funds for pet care provided by any person or entity, including my Agent.

In addition, my Agent may acquire a domestic service pet if, in my Agent's sole discretion, such service pet will benefit me.

## Section 4.29    Estate and Long Term Care Planning

A.  Notwithstanding the provisions of Section 1.03 of this Durable Power of Attorney, my Agent may engage in estate and long term care planning in furtherance of achieving asset preservation. Property transfers made pursuant to the authority granted herein may be made without restriction as to the value of the transfer, and shall, for all purposes, be deemed to have been "in my best interest" if: (1) made in accordance with the provisions

of this section; and (2) made in the context of estate planning, financial planning, Medicaid planning, long term care planning, or asset preservation planning pursuant to the recommendations of an attorney-at-law experienced in such matters. My Agent may engage in such planning based on all relevant factors, including:

    (i)   the value and nature of my property;

    (ii)  my foreseeable obligations and need for maintenance;

    (iii) minimization of taxes, including income, estate, inheritance, generation skipping transfer, and gift taxes; and

    (iv) eligibility for a benefit, a program, or assistance under a statute or government regulation.

B.  Notwithstanding the provisions of Section 1.03 of this Durable Power of Attorney, my Agent may take any action necessary to effectuate the foregoing, including to qualify me for Social Security Benefits, Supplemental Security Income, Veterans Benefits, Medicaid or any other government benefit program. Such actions may include but shall not be limited to the following:

    (i)   convert non-exempt resources into exempt resources;

    (ii)  divest me of assets, without restriction as to the value of the divestment;

    (iii) if I become married and my Agent is my spouse, my spouse may protect our assets, whether owned by me alone, my spouse alone, or by us together as husband and wife, so that my spouse's impoverishment because of my health care costs can be avoided, by whatever lawful methods that might be available;

    (iv) sign a Spousal Refusal (if I become married, and even if my Agent is my spouse);

    (v)  sign an Assignment of Support (if I become married, and even if my Agent is my spouse);

    (vi) if I become married, divide community property assets equally or unequally between my spouse and me, without restriction as to the difference of the value of our shares, if any;

    (vii) sign an application for Medical Assistance or any other government benefit program;

  (viii) serve as representative payee;

    (ix) if I become married, transfer the family residence to a spouse who does not need long-term health or nursing care, without restriction as to the value of the transfer;

    (x)  make home improvements and additions to my family residence;

    (xi) pay off, partly or in full, any encumbrance on my family residence;

    (xii) purchase a family residence, if I do not own a family residence;

  (xiii) purchase a more expensive family residence; and

(xiv)  attend and represent me at Fair Hearings.

### Section 4.30      Ownership and Rights of Survivorship

Notwithstanding the provisions of Section 1.03 of this Durable Power of Attorney, my Agent may select, create, or change the rights of survivorship on any and all of my property, whether real or personal, including bank and investment accounts, insurance policies, annuities, qualified or nonqualified retirement plans, and real property interests, and may do so by any means, including by changing ownership, such as adding a joint owner.  My Agent may designate survivorship rights among one or more remaindermen and may designate the form of title among multiple remaindermen, including, but not limited to, as tenants in common, joint tenants, community property, or tenants by the entirety.

In particular, my Agent may execute any deed designating beneficiaries, including an enhanced life estate deed (also known as a "ladybird" deed), including with respect to my homestead property, if any, and may conduct any and all transactions with full power and authority in my Agent to sell, convey, mortgage, lease, and otherwise dispose of the property in accordance with the terms of the deed.

### Section 4.31      Beneficiary Designations

Notwithstanding the provisions of Section 1.03 of this Durable Power of Attorney, my Agent may select, create, or change beneficiary designations on any and all of my property, whether real or personal, including bank and investment accounts, insurance policies, annuities, qualified or nonqualified retirement plans, and real property interests.

### Section 4.32      Spiritual and Religious Needs

My Agent may arrange for the involvement of religious clergy or spiritual leaders in my care, provide said persons access to me at all times, arrange or maintain my membership in religious or spiritual organizations, and create opportunities for me to derive comfort and spiritual satisfaction from such activities, including the purchase of religious books, tapes, and other materials.

### Section 4.33      Companionship

My Agent may provide for such companionship for me, in the sole discretion of my Agent, as will meet my needs and preferences at a time when I am disabled or otherwise unable to arrange for such companionship myself.

### Section 4.34      U.S. Mail

My Agent may open, read, respond to, and redirect my mail, and represent me before the U.S. Postal Service in all matters relating to mail service.

# Article Five
# Incidental Powers

My Agent may perform those acts and execute and deliver those legal documents necessary or appropriate to the exercise of the powers set forth in this Durable Power of Attorney, including, but not limited to, the following incidental powers.

### Section 5.01      Court Proceedings

My Agent may commence any court proceedings necessary to protect my legal rights and interests under this Durable Power of Attorney including, but not limited to:

(i)    actions for declaratory judgments from any court of competent jurisdiction interpreting the validity of this Durable Power of Attorney and any of the acts sanctioned by this Durable Power of Attorney; provided, however, that my Agent need not seek a declaratory judgment to perform any act sanctioned by this Durable Power of Attorney;

(ii)   actions for mandatory injunctions requiring any person or entity to comply with my Agent's directions as authorized by this Durable Power of Attorney; and

(iii)  actions for actual and punitive damages and the recoverable costs and expenses, including reasonable attorney's fees, of such litigation against any person or entity who negligently or willfully fails or refuses to follow my Agent's directions as authorized by this Durable Power of Attorney.

### Section 5.02      Document Execution

My Agent may sign, execute, endorse, seal, acknowledge, deliver, and file or record all appropriate legal documents necessary to exercise the powers granted under this Durable Power of Attorney.

### Section 5.03      Custody of Documents

My Agent may take, give, or deny custody of my important documents, including my Will and any codicils, trust agreements, deeds, leases, life insurance policies, contracts, or securities.  My Agent may disclose or not disclose the whereabouts or contents of those documents as my Agent believes appropriate.

# Article Six
# Limitation on Powers

All powers granted to my Agent under this Durable Power of Attorney are subject to the limitations set forth in this Article.

### Section 6.01    My Agent to Avoid Disrupting My Estate Plan

If it becomes necessary for my Agent to liquidate or reinvest any of my assets to provide support for me, I direct that my Agent, to the extent that it is reasonably possible, avoid disrupting the dispositive provisions of my estate plan as established by me prior to my incapacity.

If it is necessary to disrupt the dispositive provisions of my estate plan, my Agent will use his or her best efforts to restore my plan as soon as possible. My Agent will make reasonable efforts to obtain and review my estate plan. I authorize any person with knowledge of my estate plan or possession of my estate planning documents to disclose information to my Agent and to provide copies of documents to my Agent.

### Section 6.02    Tax Sensitive Powers

No individual serving as my Agent may exercise any fiduciary power or discretion if the exercise of that power or discretion would:

(i)   cause any income generated by my property to be attributed to my Agent for federal income tax purposes;

(ii)  cause the value of any property subject to this Durable Power of Attorney to be included in my Agent's gross estate for federal estate tax purposes;

(iii) cause any distribution made or allowed to be made by my Agent to be treated as a gift from my Agent; or

(iv)  discharge a legal obligation of my Agent.

If the exercise of a power by my Agent under this Durable Power of Attorney would cause any of the foregoing results, a Special Agent appointed under the provisions of Section 7.03 may exercise the power or discretion.

The Special Agent appointed for this purpose must be an individual who is not related or subordinate to my Agent within the meaning of Section 672(c) of the Internal Revenue Code.

# Article Seven
# Administrative Powers and Provisions

This Article contains certain administrative powers and provisions that facilitate the use of the Durable Power of Attorney and that protect my Agent and those who rely upon my Agent.

### Section 7.01    Compensation and Reimbursement to Agent

If my Agent is a professional (such as an attorney; accountant; geriatric care manager; professional guardian, conservator, or other fiduciary; or other professional, including entities that provide similar services), my Agent is entitled to compensation for services

rendered pursuant to this Durable Power of Attorney at such professional's then stated rates. If my Agent is not a professional, my Agent is entitled to such compensation at a reasonable rate under the circumstances.

Whether or not my Agent is a professional, my Agent is entitled to reimbursement for costs reasonably incurred while acting as my Agent, including, but not limited to: phone bills; postage; and travel expenses, if necessary, to supervise my care.

## Section 7.02     Release of Information

My Agent may release and obtain, as the case may be, any and all information regarding my financial investments, taxes, and estate planning, including any information or documents regarding stocks, bonds, certificates of deposit, bank accounts, tax returns, retirement accounts, pension plans, wills, trusts, powers of attorney, advance directives, and any other documents or information regarding my financial affairs, taxes, or estate planning from my attorneys-at-law, financial advisors, insurance professionals, accountants, stockbrokers, stock transfer agents, and any other persons having such information.

I release these persons or entities from any liability for releasing the above-referenced information to my Agent in reliance on this Section.

If my Agent is an attorney-at-law or other accounting or financial professional, the professional regulations of my Agent's profession and federal law may prohibit my Agent from releasing information about my financial affairs to others if I am a client of my Agent. This instrument, therefore, is a limited waiver of any privilege (such as the attorney-client privilege) that I have established with any Agent as a client. The privilege is waived for the limited purpose of permitting my Agent to perform his or her duties under this Durable Power of Attorney.

## Section 7.03     Appointment of a Special or Ancillary Agent

My Agent may appoint, in writing, a corporate fiduciary or an individual to serve as Special Agent to exercise any power under this Durable Power of Attorney. My Agent may revoke any such appointment at will.

If my Agent determines that it is necessary or desirable to appoint an Ancillary Agent to act under this Durable Power of Attorney in a jurisdiction other than this one, my Agent may do so. In making an appointment, my Agent may sign, execute, deliver, acknowledge, and make declarations in any documents that may be necessary, desirable, convenient, or proper in order to carry out the appointment.

A Special or Ancillary Agent may exercise all powers granted by this Durable Power of Attorney unless expressly limited elsewhere in this Durable Power of Attorney or by the instrument appointing the Special or Ancillary Agent. A Special or Ancillary Agent may resign at any time by delivering written notice of resignation to my Agent. Notice of resignation shall be effective in accordance with the terms of the notice.

### Section 7.04     Agent Authorized to Employ My Attorney

My Agent may employ the attorney who prepared this Durable Power of Attorney or any other attorney employed by me in connection with my estate plan or business matters and I specifically:

(i)   waive any and all conflicts of interest that might arise through such employment;

(ii)  authorize the attorney to make full disclosure of my estate plan and business to the Agent; and

(iii) authorize the attorney to accept the engagement.

### Section 7.05     Fiduciary Eligibility of Agent

My Agent is eligible to serve in any other fiduciary capacity for me or for my benefit, including trustee, guardian, conservator, committee, executor, administrator, or personal representative.

### Section 7.06     Revocation

I may revoke this Durable Power of Attorney at any time.

If this Durable Power of Attorney is revoked, no person will incur any liability to me or my estate as a result of permitting my Agent to exercise any power authorized by this Durable Power of Attorney prior to that person's receipt of notice that it was revoked.

### Section 7.07     Resignation

My Agent may resign by the execution of a written resignation delivered to me (or my guardian if I am incapacitated and one has been appointed for me) and to any Agent serving together with the resigning Agent, or if none, to the next successor Agent. If I am incapacitated, notice may be delivered to any person with whom I am residing or who has my care and custody.

### Section 7.08     Signature of Agent

My Agent shall use substantially the following form when signing documents on my behalf pursuant to this power:

*[Agent's name]*, as Agent for Dorothy M. Jewell.

### Section 7.09     Interpretation

This Durable Power of Attorney is a general power of attorney and should be interpreted as granting my Agent all general powers permitted under Virginia law. The description of specific powers is not intended to, nor does it, limit or restrict any of the general powers granted to my Agent.

### Section 7.10      Use of "Agent" Nomenclature

The word "Agent" and any modifying or equivalent word or substituted pronoun includes the singular and the plural, as well as the masculine, feminine, and neuter genders, and includes the term "attorney-in-fact."

### Section 7.11      Third-Party Reliance

No person who relies in good faith on the authority of my Agent under this Durable Power of Attorney will incur any liability to me, my estate, or my heirs, successors, and assigns.

Any party dealing with my Agent may conclusively rely upon an affidavit or certificate of my Agent stating that:

   (i)  the authority granted to my Agent under this Durable Power of Attorney is in effect;

   (ii)  my Agent's actions are within the scope of my Agent's authority under this Durable Power of Attorney;

   (iii)  I was competent when I executed this Durable Power of Attorney;

   (iv)  I have not revoked this Durable Power of Attorney; and

   (v)  my Agent is currently serving as my Agent.

### Section 7.12      Effect of Duplicate Originals or Copies

If this Durable Power of Attorney has been executed in multiple counterparts, each counterpart original will have equal force and effect.  My Agent may make copies of this Durable Power of Attorney and each copy will have the same force and effect as the original.  A copy means an electronic, digital, facsimile, photocopy, or other reproduction of this Durable Power of Attorney.

### Section 7.13      Governing Law

This Durable Power of Attorney's validity and interpretation will be governed by Virginia law.   To the extent permitted by law, this Durable Power of Attorney is applicable to all of my property (whether real or personal, tangible or intangible, or legal or equitable), wherever located, and whether or not the property is owned by me now or in the future.

### Section 7.14      Severability

If any provision of this Durable Power of Attorney is declared invalid for any reason, the remaining provisions will remain in full force and effect.

# Article Eight
# Duties and Liabilities of My Agent

### Section 8.01    Limitation of Liability of My Agent

I release and discharge any Agent acting in good faith from any and all civil liability and from all claims or demands of all kinds whatsoever by me, my estate, and my heirs, successors, and assigns arising out of the acts or omissions of my Agent, except for duties committed dishonestly, with improper motive, or with reckless indifference to the purposes of this Durable Power of Attorney or my best interests, including willful misconduct or gross negligence. This protection extends to the estate, heirs, successors, and assigns of my Agent.

In particular, any Agent who acts in good faith is not liable to any beneficiary of my estate plan for failure to preserve the plan, and absent a breach of duty to me, my Agent is not liable if the value of my property declines.

# Article Nine
# Acceptance of Appointment as Agent

Any manifestation of acceptance of appointment as Agent, whether in writing or by conduct, is an acceptance of all aspects of this Durable Power of Attorney, and may not be limited to only certain aspects. Appointment as Agent is accepted by:

   (i)   signing any document manifesting acceptance;

   (ii)  exercising any authority or performing any duties as Agent under this Durable Power of Attorney; or

   (iii) any other assertion or conduct indicating acceptance.

# Article Ten
# Declarations of the Principal

I understand that this Durable Power of Attorney is an important legal document. Before executing this Durable Power of Attorney, my attorney explained to me the following:

   (i)   that this Durable Power of Attorney provides my Agent with broad powers to dispose of, sell, convey, and encumber my real and personal property;

   (ii)  that the powers will exist for an indefinite period of time unless I revoke this Durable Power of Attorney or I have limited their duration by specific provisions herein;

(iii)  that this Durable Power of Attorney remains in full force and effect during my subsequent disability or incapacity; and

(iv)  that I may revoke or terminate this Durable Power of Attorney at any time.

Dated:  June 26, 2017

*Dorothy M. Jewell*

Dorothy M. Jewell, Principal

**Witnessed:**

*Dana L. Clark*

**(Signature)**

Dana L. Clark

**(Print Name)**

*Cynthia L. Kirk*

**(Signature)**

CYNTHIA L. KIRK

**(Print Name)**

COMMONWEALTH OF VIRGINIA          )
COUNTY OF LOUDOUN                 )

This instrument was acknowledged before me on June 26, 2017, by Dorothy M. Jewell.



GORHAM SHARPLESS CLARK
NOTARY PUBLIC
REGISTRATION # 127390
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
JULY 31, 2017

Notary Public

# Schedule A

## (Real Property)

My Agent may exercise any power described in this Durable Power of Attorney on my behalf with respect to any real property I now own or may acquire in the future, including, but not limited to, the following:

Gorham S. (Rory) Clark♦★
Chong C. Park★
Sherri L. Dennis★



THE
CLARK LAW FIRM
CLARK, PARK & DENNIS

♦also admitted in Maryland
★also admitted in D.C.

June 27, 2017

<u>By First-Class Mail</u> (Certified – Return Receipt Requested)
Thomas G. Jewell,
as agent under the Durable Power of Attorney
of Dorothy M. Jewell
114 Chesterfield Place, SW
Leesburg, Virginia 20175-2700

      Re:   *Request for Accounting*

Dear Mr. Jewell:

    I represent Dorothy M. Jewell on all matters related to your handling of her affairs under the *Durable Power of Attorney of Dorothy M. Jewell*, dated October 8, 2002 and the *Dorothy M. Jewell* Trust, dated April 8, 2002. Pursuant to *VA Code Ann. § 64.2-1612,* on behalf of Dorothy M. Jewell, I hereby request all receipts, disbursements, and transactions that you have made on Mrs. Jewell's behalf. Please provide these records to my office promptly.

                      Yours truly,

                      Chong C. Park

enclosures
cc: Kathleen B. Horne, Esq.

**EXHIBIT
5**

MAIL CORRESPONDANCE TO LEESBURG OFFICE
108 South Street, S.E. | Suite E | Leesburg, VA 20175
MEETING LOCATIONS
Fairfax | Manassas | Winchester

P (703) 443-0001 | F (703) 443-1081

WWW.THECLARKFIRM.COM

# JOHNSON & ROCHE

ATTORNEYS AT LAW
TYSONS CORNER
8355-A GREENSBORO DRIVE
McLEAN, VIRGINIA 22102

July 13, 2017

*SENT VIA FACSIMILE*
*(703) 443-1081*

Chong C. Park, Esq.
The Clark Law Firm
108 South Street, SE
Suite E
Leesburg, Virginia 20175

*Re: Dorothy M. Jewell*

Dear Mr. Park:

I have your letter of June 27, 2017. Tom Jewell has asked me to respond to it.

I am attaching the following:

1.      A copy of a letter from Dr. Belote dated April 7, 2017. Dr. Belote has been the primary care physician for Mrs. Jewell for several decades. I think the letter speaks for itself.

2.      The January 27, 2017 First Amendment to the Dorothy M. Jewell Trust which confirms that as of that date the trust is irrevocable and that it may not be modified.

Your purported Durable Power of Attorney dated June 26, 2017 is invalid. You should instruct Mr. Bolyard to cease all activities as any purported agent of Mrs. Jewell.

Likewise your purported Amendment of the Dorothy M. Jewell Trust is invalid. Please confirm that neither your firm nor Mr. Bolyard will be taking any further action in regards to these documents.



EXHIBIT

6

July 13, 2017
Page 2

I would further ask that unless directly approached by Mrs. Jewell that you and Mr. Bolyard have no further contact with Mrs. Jewell.

Sincerely yours,

Brien A. Roche

BAR/kkb

Enclosures

# JOHNSON & ROCHE
## ATTORNEYS AT LAW
TYSONS CORNER
8355-A GREENSBORO DRIVE
McLEAN, VIRGINIA 22102

August 21, 2017

***SENT VIA FACSIMILE***
***(703) 443-1081***

Chong C. Park, Esq.
The Clark Law Firm
108 South Street, SE
Suite E
Leesburg, Virginia 20175

*Re: Dorothy M. Jewell v. Thomas Jewell*

Dear Mr. Park:

As you know, I represent Tom Jewell.

I am attaching a copy of a note handwritten by Dorothy M. Jewell and signed by her on August 17, 2017 which I think speaks for itself. I don't know if you actually had a Retainer Agreement signed by Mrs. Jewell authorizing the filing of the lawsuit bearing Case No. 109910 in the Loudoun County Circuit Court. Whether you did or not I would suggest that based upon this handwritten note of Mrs. Jewell that you end that suit immediately. Please let me know if that is going to be accomplished.

Sincerely yours,

Brien A. Roche

BAR/kkb
Enclosure

cc:     Tom Jewell (via email)

**EXHIBIT**
**7**

To Whom it may concern:

I have not authorized anyone to begin
legal action against my son, Thomas G.
Jewell.

I hereby terminate all business
relationships between Jeffrey A. Bolyard,
CPA and The Clark Law Firm.

Dorothy M. Jewell
August 17, 2017

EXHIBIT

8

# JOHNSON & ROCHE
ATTORNEYS AT LAW
TYSONS CORNER
8355-A GREENSBORO DRIVE
McLEAN, VIRGINIA 22102

August 23, 2017

*SENT VIA FACSIMILE*
*(703) 443-1081*

Chong C. Park, Esq.
The Clark Law Firm
108 South Street, SE
Suite E
Leesburg, Virginia 20175

*Re: Dorothy M. Jewell v. Thomas Jewell*

Dear Mr. Park:

I have received no response to my letter of August 21. I understand that Mr. Bolyard and his assistant were at Mrs. Jewell's house yesterday apparently to have her sign some papers. I'm assuming that one of those papers was probably the Retainer Agreement. You now have a clear directive from Mrs. Jewell terminating your services.

I would ask that you let me know by the close of business this Thursday as to what your intentions are i.e., nonsuiting the case or you withdrawing from the case. I look forward to hearing back from you.

Sincerely yours,

Brien A. Roche

BAR/kkb



THE LAW OFFICE OF

# FRANK BREDIMUS

P.O. BOX 535, HAMILTON, VA 20159

EMAIL: FBREDIMUS@AOL.COM | TEL: 571-344-2278 | FAX: 540-751-1008 | VSB#28793

NOVEMBER 16, 2016

—*SENT VIA CERTIFIED MAIL*—

TO:     Dorothy M. Jewell
        405 Mosby Drive SW
        Leesburg, VA 20175-2607

**RE: Estate Planning**

Dear Mrs. Jewell:

I met with your son, Tom, to discuss legal issues that you need to attend to shortly. As you will recall, I represented you and your husband, Clarence, for many years. In fact, I met with you and Clarence at your home in 1996 to finalize Clarence's Will.

Attached is a letter outlining the legal problems that must be corrected regarding M&J of Loudoun, LLC. Additionally, in order to protect your assets from your creditors and the IRS and minimize taxes, it is imperative that you transfer your assets from your name to you and Tom as Trustees of the Dorothy M. Jewell Trust, which you established on October 8, 2002 (see the Trust attached hereto). Although you established this trust and appointed yourself as trustee in October of 2002, you never formally transferred the assets to the trust in order to effectuate the purpose of the trust. I was not the attorney who prepared this 2002 trust for you; it was drafted by John Truban in Winchester, VA. The following is a list of assets which are in your name, and are currently not protected, because they have not been transferred to you and Tom as trustees of your revocable trust:

| No. | ASSETS TO TRANSFER FROM DOROTHY M. JEWELL INDIVIDUALLY TO THOMAS G. JEWELL AS TRUSTEE OF THE DOROTHY M. JEWELL TRUST | |
|---|---|---|
| | Asset | How to Transfer |
| 1. | 22.10% Interest in M&J of Loudoun, LLC | All of the parties of M&J Loudoun, LLC must sign an amended operating agreement. |
| 2. | CDs | The CDs must be re-titled in the name of you and Tom as Trustees of your trust. |
| 3 | 50% Limited Partnership interest in Sumner Leesburg Limited Partnership | Sumner Leesburg Limited Partnership needs to sign off on an |

NOTE: This message is being sent by or on behalf of an attorney. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential, or is otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately and delete all copies of this message.

EXHIBIT
10

THE LAW OFFICE OF FRANK BREDIMUS - 2

|   |   | amendment to the Limited Partnership Agreement changing the interest from you personally to you and Tom as Trustees of your trust. |
|---|---|---|
| 4 | Bank accounts | The bank accounts must be re-titled in the name of you and Tom as Trustees of your trust. |
| 5 | Personal property: vehicle | The vehicle must be re-titled in the name of you and Tom as Trustees of your trust |
| 6 | Property in Lincoln County, Montana | The property needs to be re-titled in the name of you and Tom as Trustees of your trust. |

After reviewing this matter with your son, Tom, I recommend that we have a meeting at your house to discuss correcting these problems so that you are properly protected. Please call me at (571) 344-2278 to schedule this meeting at your convenience.

Sincerely,

Frank Bredimus

THE LAW OFFICE OF
# FRANK BREDIMUS
P.O. BOX 535, HAMILTON, VA 20159
EMAIL: FBREDIMUS@AOL.COM | TEL: 571-344-2278 | FAX: 540-751-1008 | VSB#28795

DECEMBER 30, 2016

—SENT VIA FIRST-CLASS MAIL AND E-MAIL—

TO:   Michael Kinney
      The Turner Law Firm, P.C.
      20 West Market Street
      Leesburg, Virginia 20176
      mkinney@turnerlawfirmpc.com

**RE: M&J of Loudoun, LLC**

Dear Mr. Kinney:

I am in receipt of your email dated December 5, 2016, as well as the Addendum to the Operating Agreement of M & J of Loudoun, LLC dated March 13, 2006 ("Addendum").

It appears as the Addendum addresses some of the points contained in my letter to your client, Evelyn F. Moxley, dated November 16, 2016. I ask, however, that you please forward me the following documentation associated with M & J Auto Body Service, Inc.:

1. M & J Auto Body Service, Inc. Articles of Incorporation
2. M & J Auto Body Service, Inc. By-laws
3. M & J Auto Body Service, Inc. Share Register
4. Any other M & J Auto Body Service, Inc. corporate documents

Moreover, the Addendum mentions a Martha Cochran who held one (1) share of the stock in M & J Auto Body Service, Inc., and whose one share was converted into a 0.116% membership interest in M & J of Loudoun, LLC. Do you know the history behind Martha Cochran's ownership of this share?

Finally, the Addendum appoints your client as Manager of M & J of Loudoun, LLC. As I mentioned in my previous letter to your client, Dorothy Jewell needs to transfer her membership interest in the LLC into her personal trust for estate planning purposes. Please confirm that this transfer of Dorothy Jewell's membership interest is agreeable to your

NOTE: This message is being sent by or on behalf of an attorney. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential, or is otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately and delete all copies of this message.

THE LAW OFFICE OF FRANK BREDIMUS - 2

client. If it is agreeable, I will send you an addendum to effectuate this transfer for you and your client's review.

If you have any questions regarding this matter, please call me at (571) 344-2278.

Sincerely,

Frank Bredimus

Cc.  Tom Jewell
     Dorothy Jewell

THE LAW OFFICE OF
# FRANK BREDIMUS
P.O. BOX 535, HAMILTON, VA 20159
EMAIL: FBREDIMUS@AOL.COM | TEL: 571-344-2278 | FAX: 540-751-1008 | VSB#28793

NOVEMBER 16, 2016

—*SENT VIA FIRST-CLASS MAIL*—

TO:    Evelyn F. Moxley
       312 Ayrlee Avenue NW
       Leesburg, VA 20176

**RE: M&J of Loudoun, LLC**

Dear Mrs. Moxley:

I have worked with Mr. and Mrs. Jewell on their estate planning for many years. Previously, I drafted Clarence's Will, which, in 1997, established his testamentary credit shelter trust. In 1997, the court appointed his son, Tom, as trustee of the credit shelter trust for his mother. In 2001, M&J of Loudoun, LLC was formed.

The operating agreement lists the owners of M&J of Loudoun, LLC as follows:

1. Clagett H. Moxley, Sr. – 44.20%
2. M&J Auto Body Service, Inc. (purged in 2008) – 11.60%
3. Tom Jewell as Trustee of the Clarence G. Jewell Credit Shelter Trust – 22.10%
4. Dorothy M. Jewell – 22.10%

It is my understanding that there has been no amendment to the operating agreement to change these membership interests.

Fifty percent (50%) of the shares M&J Auto Body Service, Inc. were listed in the inventory of your husband's estate, and these shares were never transferred to a new owner. Shares can only be transferred in the share book, and this was not done. The other 50% of the shares were held by Tom Jewell as Trustee for the Clarence G. Jewell Credit Shelter Trust. Accordingly, when the company was purged on June 30, 2008, Tom Jewell as Trustee of the Clarence G. Jewell Credit Shelter Trust became the Trustee in Liquidation for M&J Auto Body Service, Inc. See Virginia Code § 13.1-752 attached hereto.

NOTE: This message is being sent by or on behalf of an attorney. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential, or is otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately and delete all copies of this message.

THE LAW OFFICE OF FRANK BREDIMUS. PLC - 2

It is imperative for your family and the Jewell family to fix this legal problem while Tom Jewell is alive. Otherwise, this problem will require a court proceeding. My recommendation to the parties is that Tom as Trustee in Liquidation of M&J Auto Body Service, Inc. transfer your family's half of M&J Auto Body Service, Inc's interest in M&J of Loudoun, LLC to whomever you would like. The other half of M&J Auto Body Service Inc.'s interest in M&J of Loudoun, LLC will be transferred to Tom Jewell as Trustee of the Clarence G. Jewell Credit Shelter Trust, since Clarence was the owner of 50% of the shares in M&J Auto Body Service, Inc.

The next problem facing the parties is that your husband's 44.20% interest in M&J of Loudoun, LLC needs to be transferred to either yourself or any entity of your choosing, and the parties need to sign an amended operating agreement reflecting this transfer. As part of this agreement, Dorothy Jewell needs to transfer her 22.10% membership interest into her personal trust for estate planning purposes. Currently, you are not a member of M&J of Loudoun, LLC, and it is important that this issue be remedied as soon as possible.

These issues are rather complicated, and I strongly recommend that you personally hire an attorney to represent you individually who can explain these issues to you and work with me to solve these problems before it is too late. The attorney must represent you personally, since this legal problem has nothing to do with M&J of Loudoun, LLC, but rather pertains to you personally and M&J Auto Body Service, Inc.

Sincerely,

Frank Bredimus

Cc.  Tom Jewell
     Dorothy M. Jewell

From: **Frank** fbredimus@aol.com 
Subject: Re: Dorothy M. Jewell v. Thomas G. Jewell I Case No. CL00109910-00
Date: August 31, 2017 at 2:43 PM
To: cpark@theclarkfirm.com

Dear Mr. Park,

   I represent Tom Jewell in his Chapter 11 bankruptcy case, case number 17-11625-KHK. I received your email today. The determination of whether or not this debt claimed by Dorothy Jewell is a post-petition or pre-petition debt must be determined by the bankruptcy court, not the state court. See attached <u>Grady v. A.H.Robins Co.</u> Your motion to appoint a guardian makes reference to the October 8, 2002 power of attorney granted to Mr. Jewell. Paragraph 10 of your motion references Exhibit 1, which is your letter dated June 22, 2017 wherein you claim that you are representing Dorothy M. Jewell on all matters related to Tom Jewell's handling of her affairs under the Durable Power of Attorney of Dorothy M. Jewell dated October 8, 2002. Accordingly, Dorothy M. Jewell's claim starts on October 8, 2002 and continues to the present. This makes the claim a pre-petition claim. This issue must be decided by the bankruptcy court, and not the state court. Please let me know if you are going to proceed with the matter tomorrow so that I can attend the hearing on Mr. Jewell's behalf. Lastly, I will be sending you amended bankruptcy schedules adding Dorothy Jewell as a disputed creditor today by a separate email.

   Sincerely,

   Frank Bredimus

**The Law Office of Frank Bredimus**
P.O. Box 535, Hamilton, Virginia 20159
Tel: 571-344-2278    Fax: 540-751-1008

This is an attorney-privileged communication and is intended to be read only by the named recipient.
If you have received this message in error, please discard it immediately and notify the sender.


-----Original Message-----
From: cpark <cpark@theclarkfirm.com>
To: Frank <fbredimus@aol.com>
Sent: Thu, Aug 31, 2017 1:00 pm
Subject: Re: Dorothy M. Jewell v. Thomas G. Jewell I Case No. CL00109910-00

Mr. Bredimus:

Thank you for sending me the Suggestion in Bankruptcy.  The Chapter 11 petition was filed in May 2017.  All allegation in my action for discovery in Loudoun Circuit Court is alleged to have occurred after May 2017.  Is it your position that this circuit court action is still subject to the automatic stay?


Chong Park. Esq.



EXHIBIT

11

CLARK, PARK & DENNIS, P.C.
Market Station
108-E South Street, S.E.
Leesburg, Virginia 20175
Tel  703.443.0001
Fax 703.443.1081
cpark@theclarkfirm.com

---

This electronic mail transmission contains information from the law firm
of Clark, Park & Dennis, P.C. which may be confidential or
privileged.  If you are not the intended recipient, be aware that any
interception, disclosure, copying, distribution or use of the contents of this
information is prohibited. If you have received this transmission in error,
please refrain from reading this document (including any attachments hereto)
and immediately notify us by telephone (703-443-0001) or by electronic mail
at cpark@theclarkfirm.com).

> On Aug 25, 2017, at 3:14 PM, Frank <fbredimus@aol.com> wrote:
>
> Dear Mr. Park,
>
> Please see the attached Suggestion of Bankruptcy pertaining to the
> above-referenced matter.
>
> Sincerely,
>
> Frank Bredimus
>
> **The Law Office of Frank Bredimus**
> P.O. Box 535, Hamilton, Virginia 20159
> Tel: 571-344-2278   Fax: 540-751-1008
>
> This is an attorney-privileged communication and is intended to be read only by
> the named recipient.
> If you have received this message in error, please discard it immediately and notify
> the sender.
> <Jewell, Tom - Suggestion of Bankruptcy 8.25.17.pdf>



Grady-v-A-H-
Robins  98.pdf